**Arthur CANTEEN, Petitioner,**

v.

**Joseph SMITH, Superintendent, Shawangunk Correctional Facility, Respondent.**

**No. 05 Civ. 4580 (KMW)(DFE).**

United States District Court, S.D. New York.

May 14, 2008.

Arthur Canteen, Comstock, NY, pro se.

*OPINION AND ORDER*

KIMBA M. WOOD, District Judge:

Petitioner Arthur Canteen ("Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254"). Petitioner asserts that: (1) certain statements he made to the police should have been suppressed because they were made involuntarily (the "Involuntary Statement Claim"); (2) he was prejudiced when he was precluded from cross-examining a government witness concerning her arrest (the "Right to Cross–Examine Claim"); (3) the indictment was defective (the "Defective Indictment Claim"); (4) the trial court erred by not submitting an accomplice charge to the jury (the "Accomplice Charge Claim"); (5) the trial court erred by not submitting an intoxication charge to the jury (the "Intoxication Charge Claim"); (6) the trial court erred by submitting an improper intent charge to the jury (the "Intent Charge Claim"); (7) the line-up identification should have been suppressed because the police lacked probable cause for the arrest (the "Line–Up Identification Claim"); and (8) the trial court erred by submitting the charge of depraved indifference murder to the jury (the "Twin Theories Claim") (collectively, the "Claims").

## I. PROCEDURAL HISTORY

On March 13, 2000, following a jury trial, the New York State Supreme Court, Bronx County ("Supreme Court"), rendered judgment (1) convicting Petitioner of murder in the second degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree, and assault in the second degree; and (2) sentencing Petitioner, as a second felony offender, to an aggregate term of 45 years to life. *People v. Canteen,* 295 A.D.2d 256, 256, 744 N.Y.S.2d 380 (N.Y.App.Div.2002).

Petitioner appealed his conviction to the New York State Appellate Division, First Department ("Appellate Division"), raising, *inter alia,* the Involuntary Statement Claim, the Accomplice Charge Claim, the Intent Charge Claim, and the Line–Up Identification Claim. (Rong Aff. Exs. 2, 4; Docket Entry 11.) On June 25, 2002, the Appellate Division unanimously affirmed Petitioner's conviction. *People v. Canteen,* 295 A.D.2d 256, 256–57, 744 N.Y.S.2d 380 (N.Y.App.Div.2002). The Appellate Division rejected the Involuntary Statement Claim because Petitioner "never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved, and we decline to review it in the interest of justice." *Id.* at 256, 744 N.Y.S.2d 380. The Appellate Division also rejected the Accomplice Charge Claim, the Intent Charge Claim, and the Line–Up Identification Claim stating that "[w]e have considered and rejected [Petitioner's] remaining claims." *Id.* at 257,

744 N.Y.S.2d 380. Petitioner then applied for leave to appeal to the New York State Court of Appeals ("Court of Appeals"). (Rong Aff. Ex. 5.) On September 27, 2002, the Court of Appeals denied Petitioner's application. *People v. Canteen,* 98 N.Y.2d 729, 749 N.Y.S.2d 479, 779 N.E.2d 190 (2002).

On December 4, 2002, Petitioner moved *pro se* for a writ of error *coram nobis* arguing ineffective assistance of appellate counsel for failure to raise, *inter alia,* the Involuntary Statement Claim and the Defective Indictment Claim. (Rong Aff. Ex. 6.) On July 10, 2003, the Appellate Division denied Petitioner's motion. *People v. Canteen,* 307 A.D.2d 782, 764 N.Y.S.2d 59 (N.Y.App.Div.2003). Petitioner then applied for leave to appeal to the Court of Appeals. On December 2, 2003, the Court of Appeals denied Petitioner's application. *People v. Canteen,* 1 N.Y.3d 569, 775 N.Y.S.2d 786, 807 N.E.2d 899 (2003).

On June 9, 2004, Petitioner moved *pro se* to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10, raising, *inter alia,* the Right to Cross–Examine Claim. (Rong Aff. Ex. 7.) On October 21, 2004, the Supreme Court denied this motion. (Rong Aff. Ex. 8.) The Supreme Court found that the Right to Cross–Examine Claim "is grounded in the record," but was not raised on direct appeal. Therefore, the Supreme Court held that it was "foreclosed from considering" the claim. (*Id.* at 4.) Petitioner then applied for leave to appeal to the Appellate Division. On March 15, 2005 the Appellate Division denied Petitioner's application. (Rong Aff. ¶ 16.)

The Court hereby summarizes the Claims that Petitioner raised on direct appeal and collateral review: On direct appeal, Petitioner raised the Involuntary Statement Claim, the Accomplice Charge Claim, the Intent Charge Claim, and the Line–Up Identification Claim. In his motion for a writ of error *coram nobis,* Petitioner argued ineffective assistance of appellate counsel for failure to raise the Involuntary Statement Claim and the Defective Indictment Claim. In his CPL § 440.10 motion, Petitioner raised the Right to Cross–Examine Claim.

On April 14, 2005, Petitioner timely filed a *pro se* habeas petition. (Docket Entry 1.) On May 11, 2005, Judge Michael B. Mukasey, then Chief Judge, ordered Petitioner to file an amended petition to clarify the grounds for the requested relief. (Docket Entry 3.) On July 7, 2005, Petitioner filed an amended petition raising the Claims. (Docket Entry 4.)

By report and recommendation dated December 26, 2007 (the "Report"), familiarity with which is assumed, Magistrate Judge Douglas F. Eaton recommended that the habeas petition be denied. (Docket Entry 31.) Respondent Joseph Smith ("Respondent") agreed with the Report's recommendation, but filed timely written objections to the Report's analysis of five of the Claims. (Docket Entries 32, 33.) Petitioner did not file any objections to the Report and did not respond to Respondent's objections.

For the reasons stated below, the Court denies the habeas petition.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW OF A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

The Court must review *de novo* those portions of the magistrate judge's report and recommendation to which timely written objections have been filed. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3). In its discretion, the Court may also undertake *de novo* review of those portions of

the magistrate judge's report and recommendation to which no timely written objections have been filed. *See Thomas v. Arn,* 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Respondent filed objections to the Report's analysis of five claims. The Court thus reviews *de novo* those five claims and undertakes *de novo* review of the three remaining claims.

## B. *STANDARD OF REVIEW OF A SECTION 2254 HABEAS PETITION*

### 1. THE EXHAUSTION REQUIREMENT

It is well settled that applicants seeking habeas corpus relief pursuant to Section 2254 must first exhaust all remedies available in the state courts. *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001). Exhaustion requires a petitioner to "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991).

■ "When a claim has never been presented to a state court" it is unexhausted, but a federal habeas court may "deem the claim exhausted" if "its presentation in the state forum would be futile." *Aparicio,* 269 F.3d at 90. Accordingly, a federal habeas court may deem a claim exhausted if "there is either [1] an absence of available State corrective process; or [2] the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." *Id.* at 89 (quoting 28 U.S.C. § 2254(b)(1)).

Alternatively, an unexhausted claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). "The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits." *Toland v. Walsh,* No. 02 Civ. 0399, 2008 WL 820184, at *15 (N.D.N.Y. Mar. 26, 2008). "Several district judges in this Circuit have expressed the test as whether the unexhausted claim is 'patently frivolous.'" *Hernandez v. Lord,* No. 00 Civ. 2306, 2000 WL 1010975, at *4 (S.D.N.Y. July 21, 2000) (collecting cases). "Other courts ... express the test as whether it is perfectly clear that the [petitioner] does not raise even a colorable federal claim, in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." *Id.* at *4 n. 8 (internal quotation marks and citation omitted) (collecting cases).

### 2. PROCEDURAL DEFAULT

Procedural default occurs (1) "when a state court declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement," *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); or (2) when "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n. 1, 111 S.Ct. 2546. However, a state procedural bar "will be deemed adequate only if it is based on a [procedural requirement] that is firmly established and regularly followed by the state in question." *Cotto v. Herbert,* 331 F.3d 217, 239 (2d Cir.2003) (internal quotation marks and citations omitted).

■ Procedural default generally precludes federal habeas relief. *See Jones v. Vacco,* 126 F.3d 408, 414 (2d Cir.1997). However, a petitioner may overcome procedural default, by demonstrating "[1] [a] cause for the default and [b] prejudice, or

demonstrat[ing] that failure to consider the claims will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio*, 269 F.3d at 90. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded … efforts to comply with the State's procedural rule.'" *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir.2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To establish "actual prejudice," a petitioner must establish "a reasonable probability" that, but for the violation of federal law, the outcome of the case would have been different. *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir.1991). A "fundamental miscarriage of justice" occurs only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993) (internal quotation marks and citation omitted).

### 3. DEFERENCE TO STATE COURT ADJUDICATIONS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a Section 2254 habeas petition

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)(2).[1] "[T]o invoke the deferential standards of AEDPA, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio*, 269 F.3d at 93–94.

The "contrary to" clause of Section 2254(d)(1) is satisfied when "(1) the state court applies a rule that contradicts the governing law set forth in the relevant Supreme Court precedents, or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [the Supreme Court] precedent." *Brooks v. Artuz*, No. 97 Civ. 3300, 2000 WL 1532918, at *3, 2000 U.S. Dist. LEXIS 15070, at *8 (S.D.N.Y. Oct. 17, 2000) (internal quotation marks and citation omitted).

"Under the 'unreasonable application' clause of [Section] 2254(d)(1), 'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Cotto*, 331 F.3d at 247 (quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). The Supreme Court clarified that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 412, 120 S.Ct. 1495 (emphasis in original). A federal court thus cannot grant habeas relief because, "in its independent judgment, it

---

1. The Court notes that even liberally construing the Claims, as the Court must, Petitioner does not raise a Section 2254(d)(2) challenge. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.2006) (submissions filed by *pro se* litigants shall be construed to "raise the strongest arguments that they suggest").

would have decided the federal law question differently." *Aparicio,* 269 F.3d at 94.

### C. *THE CLAIMS*

#### 1. PROCEDURALLY DEFAULTED CLAIMS

The Court dismisses five claims for procedural default: the Involuntary Statement Claim, the Right to Cross–Examine Claim, the Defective Indictment Claim, the Accomplice Charge Claim, and the Intoxication Charge Claim. "Dismissal for procedural default is regarded as a disposition of the habeas claim on the merits." *Aparicio,* 269 F.3d at 90.

#### a. THE INVOLUNTARY STATEMENT CLAIM AND THE RIGHT TO CROSS–EXAMINE CLAIM

■ After *de novo* review, the Court finds that a state court previously declined to address the Involuntary Statement Claim and the Right to Cross–Examine

**2.** The Appellate Division further found that "[w]ere [it] to review this claim, [it] would find that the People established the voluntariness of [Petitioner's] statements beyond a reasonable doubt and that [Petitioner's] trial testimony does not warrant a different conclusion." *People v. Canteen,* 295 A.D.2d at 256, 744 N.Y.S.2d 380. Although the Appellate Division ruled in the alternative on the merits of the Involuntary Statement Claim, the Appellate Division expressly relied on Petitioner's failure to satisfy a procedural requirement as a separate basis for the decision. Accordingly, the Court concludes that the Involuntary Statement Claim is procedurally defaulted. *See Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990).

**3.** The Court finds that the Court of Appeals "did not silently disregard [the procedural default] and consider the merits" of the Involuntary Statement Claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

The Court further finds that the Appellate Division did not consider the merits of the Involuntary Statement Claim in the context of Petitioner's motion for a writ of error *coram*

Claim due to Petitioner's failure to meet state procedural requirements. The Court thus dismisses these two claims for procedural default.

In his Involuntary Statement Claim, Petitioner contends that his statement to the police should have been suppressed at trial because it was taken involuntarily. (*See* Am. Pet. ¶ 13; Pet. 6.) At trial, Petitioner testified that he was beaten by detectives who instructed him how to answer questions. (Tr. 1115–18, 1127–29.) On direct appeal, the Appellate Division held that because Petitioner "never requested that the court reopen the suppression hearing, his claim that his trial testimony established the involuntariness of his statements is unpreserved, and we decline to review it in the interests of justice." *People v. Canteen,* 295 A.D.2d at 256, 744 N.Y.S.2d 380.[2] The Court of Appeals denied Petitioner's application for leave to appeal without elaboration.[3]

*nobis.* In this motion, Petitioner argued ineffective assistance of appellate counsel based on his appellate counsel's failure to raise the Involuntary Statement Claim. "[T]he writ of error *coram nobis* lies in [state appellate court] only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." *Turner v. Artuz,* 262 F.3d 118, 123 (2d Cir.2001) (internal quotation marks and citations omitted). The underlying Involuntary Statement Claim is distinct from the ineffective assistance of appellate counsel claim. "A court considering ineffective assistance might never reach the underlying Constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying Constitutional claims." *Id.* The Appellate Division did not indicate any consideration of the merits of the Involuntary Statement Claim. The Court thus finds that the Appellate Division did not consider the merits of this claim in the context of Petitioner's motion for a writ of error *coram nobis.*

Accordingly, "the last reasoned opinion on the [Involuntary Statement Claim] explicitly

In his Right to Cross–Examine Claim, Petitioner contends that he was prejudiced when he was precluded from cross-examining Sandra Smallwood, a government witness, concerning her arrest on December 13, 1997 for allegedly taking a gun from a shooter. (*See* Pet. 8–9.) On collateral review of Petitioner's CPL § 440.10 motion, the Supreme Court held that it was "foreclosed from considering" this claim because it "is grounded in the record," but was not raised on direct appeal.[4] (Rong Aff. Ex. 8.) The Appellate Division denied Petitioner's application for leave to appeal without elaboration.[5]

The state court adjudications of each claim rested on an adequate state procedural bar. The Appellate Division rejected the Involuntary Statement Claim because Petitioner failed to comply with New York's preservation rule. *See Richardson v. Greene,* 497 F.3d 212, 217 (2d Cir.2007) (citing CPL § 470.05(2)) (the New York preservation rule "requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial"). The Supreme Court rejected the Right to Cross–Examine Claim because CPL § 440.10(2)(c) precludes consideration of record-based claims on collateral review. *See People v. Mower,* 97 N.Y.2d 239, 245–46, 739 N.Y.S.2d 343, 765 N.E.2d 839 (2002) (holding that when a claim "does not involve factual matters beyond the scope of the record or legal issues which could not have been asserted before the final judgment of conviction, it [is] not the proper subject of a CPL [§ ] 440.10 motion"). Both of these procedural requirements are firmly established and regularly followed. *See Richardson,* 497 F.3d at 220; *Mower,* 97 N.Y.2d at 245–46, 739 N.Y.S.2d 343, 765 N.E.2d 839; *People v. Cooks,* 67 N.Y.2d 100, 103–04, 500 N.Y.S.2d 503, 491 N.E.2d 676 (1986). Accordingly, the Involuntary Statement Claim and the Right to Cross–Examine Claim are procedurally defaulted.

Petitioner fails to overcome these procedural defaults. Petitioner presents no evidence demonstrating (1)(a) "cause" for the failure to properly preserve the Involuntary Statement Claim or for the failure to raise the Right to Cross–Examine Claim on direct appeal; and (b) "actual prejudice" arising from either procedural default; or (2) that failure to consider the Involuntary Statement Claim or the Right to Cross–Examine Claim will result in a "fundamental miscarriage of justice."

Accordingly, the Court dismisses the Involuntary Statement Claim and the Right to Cross–Examine Claim for procedural default.

**b. THE DEFECTIVE INDICTMENT CLAIM, THE ACCOMPLICE CHARGE CLAIM, AND THE INTOXICATION CHARGE CLAIM**

■ After *de novo* review, the Court finds that (1) Petitioner failed to exhaust state court remedies for the Defective Indictment Claim, the Accomplice Charge

---

imposes a procedural default." *Ylst,* 501 U.S. at 803, 111 S.Ct. 2590.

**4.** Pursuant to CPL § 440.10(2)(c):

[T]he court must deny a motion to vacate a judgment when ... [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to

the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

**5.** The Court finds that the last reasoned opinion on the Right to Cross–Examine Claim explicitly imposes a procedural default. *See supra* note 3 (explaining the presumption that a reviewing court does not silently consider the merits of a claim).

Claim, and the Intoxication Charge Claim; and (2) state court review of these three claims is now procedurally barred. The Court thus dismisses these three claims for procedural default.

Petitioner contends that (1) the indictment was defective because "multiple true bills were filed under a single indictment" (*see* Am. Pet. ¶ 13; Pet. 8); (2) the trial court erred by not submitting an accomplice charge for Regina Canteen, a government witness, to the jury (*see* Am. Pet. ¶ 13; Pet. 11–12); and (3) the trial court erred by not submitting an intoxication charge to the jury (*see* Am. Pet. ¶ 13; Pet. 11). Petitioner failed to exhaust state remedies on the Defective Indictment Claim, the Accomplice Charge Claim, and the Intoxication Charge Claim.[6]

However, the Court deems these three claims exhausted and concludes that they are procedurally defaulted. Pursuant to firmly established and regularly followed procedural requirements, "the court to which [Petitioner] would be required to present [these three] claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Petitioner cannot again seek leave to

appeal any of these three claims "in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled." *Grey*, 933 F.2d at 120 (citing N.Y. Court Rules § 500.10(a)). The three claims are record-based and therefore cannot be raised on collateral review. *See* CPL § 440.10(2)(c). Accordingly, the Court deems these three claims exhausted and concludes that they are procedurally defaulted. *See Grey*, 933 F.2d at 120–21.

Petitioner fails to overcome these procedural defaults. Petitioner presents no evidence demonstrating (1)(a) "cause" for the failure to raise the Defective Indictment Claim on direct appeal, for the failure to raise any federal constitutional aspects of the Accomplice Charge Claim on direct appeal, or for the failure to raise the Intoxication Charge Claim on direct appeal; and (b) "actual prejudice" arising from any of these procedural defaults; or (2) that failure to consider the Defective Indictment Claim, the Accomplice Charge Claim, or the Intoxication Charge Claim will result in a "fundamental miscarriage of justice."

Accordingly, the Court dismisses the Defective Indictment Claim, the Accom-

---

**6.** Petitioner referenced (1) the Defective Indictment Claim in his motion for a writ of error *coram nobis*, and (2) the Accomplice Charge Claim on direct appeal. However, these references did not exhaust state remedies.

The Court finds that in the context of Petitioner's motion for a writ of error *coram nobis*, the Appellate Division did not consider the merits of the Defective Indictment Claim. *See supra* note 3 (explaining the distinction between an underlying claim and an ineffective assistance of appellate counsel claim based on the appellate counsel's failure to raise an underlying claim).

The Court finds that although Petitioner raised the Accomplice Charge Claim on direct appeal (Rong Aff. Ex. 4), he failed to "fairly present" any federal constitutional aspects of

this claim to the Appellate Division. *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 194 (2d Cir.1982) (holding that "a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution [through] (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."); *see also Jones*, 126 F.3d at 413–14 ("Citing a specific constitutional provision or relying on federal constitutional precedents alerts state courts of the nature of the claim.")

plice Charge Claim, and the Intoxication Charge Claim for procedural default.

### 2. THE INTENT CHARGE CLAIM

█ Petitioner contends that the trial court erred by submitting an improper intent charge to the jury. (*See* Am. Pet. ¶ 13; Pet. 12–13.) Petitioner raised the Intent Charge Claim on direct appeal and the Appellate Division stated that it "considered and rejected" this claim. *People v. Canteen*, 295 A.D.2d 256, 257, 744 N.Y.S.2d 380 (N.Y.App. Div.2002). The Appellate Division's decision constitutes an adjudication on the merits, thereby triggering review under the deferential standard codified in Section 2254(d).[7] *See Aparicio*, 269 F.3d at 93–94.

After *de novo* review, the Court adopts the Report's analysis of the merits of the Intent Charge Claim (Report 10–11), and concludes that the intent charge was neither "contrary to" nor "an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1).

### 3. THE LINE–UP IDENTIFICATION CLAIM

█ Petitioner contends that the line-up identification should have been suppressed because the police lacked probable cause for his arrest. (*See* Am. Pet. ¶ 13, Pet. 6.)

After *de novo* review, the Court adopts the Report's analysis and finds that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), precludes federal habeas review of this claim. (Report 6–7.) In *Stone v. Powell*, the Supreme Court of the United States held that "where the State has provided an opportunity for full

and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494, 96 S.Ct. 3037. Federal habeas relief may only be granted in such circumstances if "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or the state has provided a corrective mechanism, but the [petitioner] was precluded from using the mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir.1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978)).

Petitioner fails to establish either exception to *Stone v. Powell* preclusion of federal habeas review. It is evident that (1) New York State provides corrective procedures to redress alleged Fourth Amendment violations, and (2) Petitioner was not precluded from using these procedures. Indeed, Petitioner acknowledges that the Supreme Court conducted a suppression hearing on the Line–Up Identification Claim. (Rong Aff. Ex. 25; *see also* Rong Aff. Ex. 35–9.) Petitioner raised the Line–Up Identification Claim on direct appeal. Furthermore, although his application was denied, Petitioner had an opportunity to apply for leave to appeal to the Court of Appeals.

Accordingly, the Court finds that *Stone v. Powell* precludes federal habeas review of the Line–Up Identification Claim.

### 4. THE TWIN THEORIES CLAIM

█ Petitioner contends that based on a recent line of cases narrowing the scope of

---

**7.** The Appellate Division's decision is the last reasoned opinion on the Intent Charge Claim. Petitioner applied for leave to appeal to the Court of Appeals, but the Court of Appeals

denied Petitioner's application. *People v. Canteen*, 98 N.Y.2d 729, 749 N.Y.S.2d 479, 779 N.E.2d 190 (2002).

the crime denominated "depraved indifference murder," the trial court erred by submitting the charge of depraved indifference murder to the jury. (*See* Am. Pet. ¶ 13; Pet. 13–14; Report 3–4.)[8]

Petitioner concedes that the Twin Theories Claim "has not had a chance to be exhausted." (Am. Pet. ¶ 13.) The Court declines to find this claim procedurally defaulted because Petitioner would, but for the following, be able to raise it in a CPL § 440.10 motion. *See Mower*, 97 N.Y.2d at 245–46, 739 N.Y.S.2d 343, 765 N.E.2d 839 (permitting CPL § 440.10 motions that assert "legal issues which could not have been asserted before the final judgment of conviction"). However, under the both the "patently frivolous" test and the "colorable federal claim" test, the Court denies the Twin Theories Claim on the merits.

Petitioner argues that the trial court erred by submitting the charge of depraved indifference murder to the jury based on a recent line of cases narrowing the scope of the crime denominated "depraved indifference murder." In *People v. Hafeez*, 100 N.Y.2d 253, 259, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (2003), the Court of Appeals held that when the defendant's actions "were focused on first isolating, then intentionally injuring, the victim … there exists no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference mur-

der." In *People v. Gonzalez*, 1 N.Y.3d 464, 467 & 469, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004), the Court of Appeals found a count of depraved indifference murder "insupportable as a matter of law" where the defendant shot the victim ten "times at close range, even after [the victim] had fallen to the ground." In *People v. Payne*, 3 N.Y.3d 266, 272, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004), the Court of Appeals held that absent circumstances such as the endangerment of others, "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."

However, the Court finds that this line of cases cannot support an argument that the trial court improperly submitted the charge of depraved indifference murder to the jury. The Court adopts the Report's analysis, and concludes that Petitioner endangered others when he fired into the crowd at the nightclub. (Report 4.) The evidence in this case supported conviction on both the charge of depraved indifference murder, and the charge of intentional murder (on which Petitioner was convicted). The Court finds that Petitioner's argument to the contrary is (1) patently frivolous, and (2) does not raise a colorable federal claim.

Accordingly, the Court denies the Twin Theories Claim on the merits.

---

**8.** The Court notes an alternative interpretation of Petitioner's Twin Theories Claim: The trial court improperly permitted the prosecutor to present, and improperly charged the jury with, two alternative theories of murder, intentional murder and depraved indifference murder. (*See* Am. Pet. ¶ 13; Pet. 13–14; Report 3–4.) Petitioner concedes that the Twin Theories Claim "has not had a chance to be exhausted." (Am. Pet. ¶ 13.) However, the Court deems this interpretation of the Twin Theories Claim exhausted and concludes that it is procedurally defaulted. Petitioner can- not again seek leave to directly appeal this claim and it cannot be raised on collateral review because it is record-based. Furthermore, Petitioner presents no evidence demonstrating (1)(a) "cause" for the failure to raise this claim on direct appeal; and (b) "actual prejudice" arising from this procedural default; or (2) that failure to consider this interpretation of the Twin Theories Claim will result in a "fundamental miscarriage of justice." Accordingly, the Court dismisses this interpretation of the Twin Theories Claim for procedural default.

## III. *CONCLUSION*

For the reasons set forth above, Petitioner's Section 2254 habeas petition is denied. A certificate of appealability will not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b); *cf. United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997). The Court certifies pursuant to 28 U.S.C. § 1915(a) (3) that any appeal from this order would not be taken in good faith. The Clerk of Court is directed to close this case; any pending motions are moot.

SO ORDERED.