**Demetrius BELL, Petitioner,**

v.

**Robert ERCOLE, Superintendent, Respondent.**

**No. 08 CIV. 5880 VM.**

United States District Court, S.D. New York.

July 1, 2009.

Demetrius Bell, Stormville, NY, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

■ Pro se petitioner Demetrius Bell ("Bell"), who is currently incarcerated at Eastern New York Correctional Facility ("ENYCF"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254"). Respondent William Brown (the "State") is Superintendent of ENYCF.[1] Following a jury trial, Bell was convicted in New York State Supreme Court, Bronx County (the "Trial Court"), of Criminal Possession of a Weapon in the Second Degree, in violation of New York State Penal Law § 265.03. The Trial Court sentenced Bell to a determinate prison term of fourteen years.

In his petition, Bell asserts three claims for habeas relief: (1) there was no probable cause for his arrest and detainment, and therefore evidence obtained incident to his arrest should have been suppressed pursuant to his rights under the Fourth Amendment of the United States Constitution; (2) the Trial Court erroneously refused to instruct the jury on the defense of temporary and lawful possession of a weapon, thus violating his Sixth Amendment right to a fair trial; and (3) his fourteen-year sentence should be reduced in the interest of justice. For the reasons stated below, Bell's petition is DENIED.

### I. BACKGROUND[2]

#### A. FACTUAL HISTORY

On the evening of March 8, 2003, Bell and his girlfriend, Chantaye Moore ("Moore"), attended a party at an apartment building at 620 East 137th Street in the Bronx. Upon leaving the party, Bell and Moore were followed into an elevator by a group of people which included Darius Rachel ("Rachel") and Brian McLeod ("McLeod"). When exiting the elevator into the lobby, Rachel approached Bell, engaged Bell in brief conversation, and drew a gun on Bell. Bell rushed at Rachel, the other men from the elevator rushed at Bell, and in the ensuing physical altercation, multiple shots were fired from Rachel's gun, one of which hit Rachel in the chest, ultimately killing him. Bell then obtained control of the gun and, in his words, in the heat of the moment "recklessly pulled the trigger aiming in all directions." (Hughes Decl. Ex. 1 (Brief for Defendant–Appellant, dated March 19, 2007 ("App. Br.")) at 20.) Bell alleges that he then dropped the gun in the lobby and

---

1. The State informs the Court that Bell incorrectly named Robert Ercole, Superintendent of the Green Haven Correction Facility, as respondent in this action. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires that a state prisoner's habeas petition "must name as respondent the state officer who has custody." Although Ercole had custody of Bell at the time of filing. Bell was subsequently relocated to ENYCF. However, given that Bell named the proper party at the time of filing, that he filed his petition pro se, and that the State does not challenge the Court's jurisdiction in this action, *see Smith v. Idaho,* 392 F.3d 350, 356 (9th Cir.2004) (stating that the state may waive lack of personal jurisdiction), the Court treats Bell's petition as if he properly had named William Brown, Superintendent of ENYCF, as respondent. *See, e.g., Robles v.*

*Dennison,* No. 05 Civ. 0428, 2007 WL 2187303, at *1 n. 1 (W.D.N.Y. July 30, 2007) (treating § 2254 petition as if petitioner had named proper respondent).

2. The summary below derives from the submissions of Bell and the State to the Court and the exhibits attached thereto, including: Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated June 5, 2008; Respondent's Memorandum of Law in Opposition to Petitioner's Application for a Writ of Habeas Corpus, dated March 2009; and Declaration of Bryan C. Hughes in Opposition to Petition for Habeas Corpus, dated March 10, 2009 ("Hughes Decl."). Except where specifically referenced, no further citation to these sources will be made.

drove off with Moore. However, eyewitnesses later stated that they observed Bell chasing McLeod down the street, firing two or three more shots at McLeod before driving away with Moore in a white vehicle. McLeod suffered a non-fatal gunshot wound to the head.

When police responded, eyewitnesses identified the shooter as a 19– to 20–year-old black male named "Demetrius," a former resident of the Bronx who recently had moved to Schenectady, New York with Moore. Based on this information, police conducted a database search and the only name returned was "Demetrius Bell," born November 4, 1982, residing at a Schenectady address and to whom a white 1991 Mercury, New York license plate number CFX1473, was registered. The police issued a statewide "Be on the Lookout" ("BOLO") alert for Demetrius Bell, stating that he was wanted in connection with a homicide in the Bronx. The BOLO provided a description of Bell and indicated that he was likely heading towards Schenectady, accompanied by a "black female," in a 1991 white four-door Mercury with a New York license plate reading CFX1473.

At about 1:37 a.m. on March 9, 2003, a Schenectady police officer who received the BOLO alert recognized Bell's vehicle near a highway exit leading to Schenectady, and he effected a stop. The officer saw Bell in the passenger seat with blood on his shirt and hands. Bell and Moore, the driver, identified themselves. After confirming that Bell was the suspect described in the BOLO alert, the officer handcuffed Bell and Moore and transported them to the Schenectady Police Station, where they awaited the arrival of New York City Police Department ("NYCPD") detectives.

Approximately three hours later, two NYCPD detectives arrived at the Schenectady Police Station and advised Bell of his *Miranda* rights. Bell agreed to provide the detectives with both an oral and a written statement. In his statement, Bell claimed that he wrested the gun away from Rachel, but that he then dropped the weapon in the lobby of the apartment building and ran to the car.

Police executed a search warrant of Bell's vehicle and recovered, among other things, a bloody t-shirt and a loaded nine-millimeter handgun with blood smeared on the handle. A ballistics examination revealed that the weapon matched the ballistics evidence recovered from the crime scene, and DNA testing revealed that the blood on both the gun handle and the t-shirt matched Bell's DNA profile.

## B. *PROCEDURAL HISTORY*

The Bronx County Grand Jury indicted Bell of Murder in the Second Degree, Attempted Murder in the Second Degree, Assault in the First and Second Degrees, Attempted Assault in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Reckless Endangerment. Before trial, Bell filed a motion to suppress evidence obtained after his arrest, arguing that the police, acting solely on the basis of the BOLO alert, lacked probable cause to stop his vehicle and arrest him. Bell's motion was denied.

With regard to the count of Criminal Possession of a Weapon in the Second Degree, Bell requested a jury instruction of temporary and lawful possession, reasserting that he left the gun at the scene and had not brought it with him in the car. The Trial Court refused Bell's request; instead it instructed the jury that justification is not a defense to Criminal Possession of a Weapon in the Second Degree, but "the use of the weapon with justification is not evidence of possession with intent to use it unlawfully against another." (Hughes Decl. Ex. 2 (Respondent's

Brief, dated October 2007 ("Resp. Br.")) at 25.)

On March 21, 2005, the jury found Bell guilty of Possession of a Weapon in the Second Degree in violation of New York Penal Law § 265.03, and acquitted him on all other counts. The Trial Court sentenced Bell, as a second felony offender, to a determinate prison term of fourteen years.

On appeal to the New York Appellate Division, First Department ("Appellate Division"), Bell argued that: (1) the Trial Court erred in admitting evidence obtained after Bell's arrest, as police had no probable cause based on the BOLO alert to arrest and detain him for over three hours; (2) the Trial Court erred in refusing to instruct the jury on his requested temporary lawful possession of a weapon defense; and (3) because it was Bell's first violent conviction and he was twenty years old at the time of the incident, his fourteen-year sentence was harsh and excessive and should be reduced in the interest of justice.

On December 20, 2007, the Appellate Division unanimously affirmed Bell's conviction, finding that: (1) the Trial Court "properly denied [Bell's] suppression motion" where "police had probable cause to arrest [Bell] based on information obtained from eyewitnesses and the subsequent investigation," and "[o]nce the [arresting] officer observed and recognized [Bell] in a vehicle which matched the description given in the radio transmission, he was entitled under the fellow officer rule to arrest [Bell]"; (2) the Trial Court "properly denied [Bell's] request for a charge on the defense of temporary and lawful possession since there was no reasonable view of the evidence, in a light most favorable to [Bell], to support such a charge," for "[e]ven under [Bell's] version of the events, his conduct was utterly at odds with any claim of innocent possession"; and (3)

there was "no basis for reducing the sentence." *People v. Bell*, 46 A.D.3d 385, 848 N.Y.S.2d 618, 618 (1st Dep't 2007) (citations and quotation marks omitted).

On January 31, 2008, Bell sought leave to appeal the Appellate Division's ruling to the New York Court of Appeals, filing a supplemental letter on February 27, 2008. Bell's request was denied by the Court of Appeals on March 27, 2008. *People v. Bell*, 10 N.Y.3d 808, 857 N.Y.S.2d 41, 886 N.E.2d 806 (2008) (table). Bell timely filed this petition for a writ of habeas corpus on June 5, 2008, within the one-year limitation period under 28 U.S.C § 2244(d)(1).

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

■■■■ As an initial matter, the Court notes that Bell is proceeding pro se, and accordingly his submissions should be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (*quoting Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). The Court, moreover, must liberally construe Bell's pro se pleadings and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

■■■■ Federal habeas review of state court decisions is governed by the standard set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–55. AEDPA provides that

a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Errors of state law are not subject to federal habeas review, for " 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.' " *DiGuglielmo v. Smith,* 366 F.3d 130 (2d Cir. 2004) (*quoting Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Accordingly, a petitioner must demonstrate that his state court conviction violated federal law. *See Estelle,* 502 U.S. at 68, 112 S.Ct. 475.

■ Not every alleged violation of federal law, however, will warrant the issuance of a writ of habeas corpus. *See Thurman v. Allard,* No. 01 Civ. 8746, 2004 WL 2101911, at *11 (S.D.N.Y. Sept. 22, 2004). Where a state court has decided a petitioner's federal claims on the merits, this Court may grant habeas relief only if the state court's decision

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ A state court decision is "contrary to" clearly established federal law "if it 'contradicts the governing law' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and neverthe-less arrives at a result different from' the Supreme Court." *Yung v. Walker,* 341 F.3d 104, 109–10 (2d Cir.2003) (*quoting Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). To be considered "contrary" within the meaning of 28 U.S.C. § 2254(d), a state court decision must be "substantially different" from relevant Supreme Court precedent. *Williams,* 529 U.S. at 405, 120 S.Ct. 1495. Under this standard, as long as the state court decision applies the correct legal rule to the petitioner's facts, it is not subject to habeas review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. *See id.* at 406, 120 S.Ct. 1495.

■ A state court decision is "based on an unreasonable determination of the facts" if the court correctly identifies the legal rule set forth in governing Supreme Court cases, but unreasonably applies the rule to the peculiar facts of the case. *Id.* at 407, 120 S.Ct. 1495, For the purpose of federal habeas review, the factual determinations of a state court are presumed correct, and a petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A federal court may grant habeas relief only where the state court decision as it pertains to any issue of federal law was objectively unreasonable in light of relevant precedent; thus, in construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive habeas review. *See Williams,* 529 U.S. at 411, 120 S.Ct. 1495.

B. *EXHAUSTION*

■ Prior to bringing a petition for habeas corpus in federal court, a petitioner first must exhaust the remedies available in state court or demonstrate that "there is an absence of available State corrective process [or] [that] circumstances exist that

render such process ineffective to protect the rights of the applicant." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir.2000) (*quoting* § 2254(b)(1)) (alterations in original). To have exhausted claims in state court, a petitioner must have "fairly presented" each federal claim to the highest state court. *Id.* (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997) (*quoting Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982)). A petitioner's federal habeas claim, in other words, must be the "substantial equivalent" of the claim presented in state court. *Strogov v. Attorney Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir.1999) (*quoting Picard*, 404 U.S. at 278, 92 S.Ct. 509).

■■■ Nonetheless, this Court may choose to consider an unexhausted claim on its merits notwithstanding the absence of exhaustion. *See* § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). If the Court finds that all of the claims presented as a basis for habeas relief lack merit, the Court has discretion to dismiss the petition on its merits, even though it may contain some unexhausted claims. *See, e.g., Mallet v. Miller*, 432 F.Supp.2d 366, 375 (S.D.N.Y.2006).

## C. *APPLICATION*

Bell's petition raises claims identical to those he brought before the Appellate Division: (1) the Trial Court erred in admitting evidence obtained after Bell's arrest and detention; (2) the Trial Court erred in refusing to instruct the jury on Bell's requested temporary lawful possession of a weapon defense; and (3) Bell's fourteen-year sentence should be reduced in the interest of justice. The Court addresses each claim in turn.

### 1. *Lack of Probable Cause*

Bell asserts that evidence obtained following his arrest should have been suppressed because the police lacked probable cause to arrest and detain him. Bell was arrested on March 9, 2003, in Schenectady, New York. A statewide BOLO broadcast, providing a detailed description of Bell and his vehicle, alerted the Schenectady Police Department of his likely approach to the area. Based on this information, a police officer recognized Bell's vehicle and, after confirming Bell's identity, detained him in the Schenectady Police Station.

■■■ Where a petitioner has been provided the opportunity for full and fair litigation of his federal Fourth Amendment claim before the state courts, a federal habeas court may not grant relief on the claim. *See Stone v. Powell*, 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). This rule applies to suppression challenges to post-arrest statements and evidence for lack of probable cause. *See, e.g., Cardwell v. Taylor*, 461 U.S. 571, 573, 103 S.Ct. 2015, 76 L.Ed.2d 333 (1983) (per curiam) (applying *Stone* to custodial statements); *Chavis v. Henderson*, 638 F.2d 534 (2d Cir.1980) (applying *Stone* to post-arrest identification evidence); *see also Parker v. Woughter*, No. 09 Civ. 3843, 2009 WL 1616000, at *3 (S.D.N.Y. June 9, 2009) ("[T]he underlying issue is whether there was probable cause for [petitioner's] arrest. The suppression issue is therefore a Fourth Amendment claim not cognizable on habeas corpus.").

■■■ Even if the Court were to agree with Bell that the police lacked probable cause to arrest and detain him, *Stone* holds that a district court has "no authority to review the state record and grant the writ

simply because [it] disagree[s] with the result reached by the state courts," as long as the petitioner was given an opportunity for full and fair litigation of his or her Fourth Amendment claim. *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (*citing Stone* ).

■■■ To receive habeas review on this claim, Bell must show that he was not provided such an opportunity for full and fair litigation. That is, he must show either that (1) the state failed to provide any corrective procedures by which the claim could be litigated; or (2) Bell was unable to avail himself of such corrective procedures because of an unconscionable breakdown in the underlying process. *See Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir. 1992).

■■■ Bell does not claim that the state failed to provide appropriate corrective procedures, nor is there any evidence of such a failure.[3] To the contrary, Bell availed himself of those very procedures by appealing his conviction on these and other grounds to the Appellate Division and the Court of Appeals. Because the state provided Bell with ample opportunity to litigate his Fourth Amendment claim, that claim is not cognizable on federal habeas review. *See, e.g., Canteen v. Smith,* 555 F.Supp.2d 407, 416 (S.D.N.Y. 2008) (rejecting petitioner's Fourth Amendment claim of lack of probable cause where petitioner failed to establish either exception to *Stone* ). The Court therefore denies Bell's petition with respect to this claim.

2. *Right to a Fair Trial*

■■■ Bell next argues that the Trial Court's refusal to instruct the jury on the defense of temporary lawful possession of a weapon violated his right to a fair trial. Although Bell generally cites state law in his briefs to the Appellate Division and his application letters to the Court of Appeals, he also makes specific reference to the Sixth Amendment in his appellate briefing. (*See* App. Br. at 51; Hughes Decl. Ex. 3 (Reply Brief for Defendant–Appellant, dated November 9, 2007), at 5, 11.) Thus, Bell's claim was exhausted in state court and his claim is not procedurally barred on this ground. *See, e.g., Gonzalez v. Sullivan,* 934 F.2d 419, 423 (2d Cir.1991) (petitioner's citation to Fourteenth Amendment in heading of Appellate Division brief sufficiently exhausted claim in state courts); *McCaskell v. Keane,* No. 97 Civ. 2999, 2001 WL 840331, at *10 (S.D.N.Y. July 26, 2001) (claim deemed exhausted where petitioner argued to both the Appellate Division and the Court of Appeals that he had been "deprived of a fair trial" and cited the Fourteenth Amendment).

■■■ Even though Bell's claim is properly exhausted, he nonetheless fails to demonstrate a constitutional violation meriting habeas relief. A petitioner must satisfy two requirements in order to establish that an erroneous jury charge deprived him of a right to a fair trial. First, the petitioner must show that he "was erroneously deprived of a jury instruction to which he was entitled under state law." *Jackson v. Edwards,* 404 F.3d 612, 621 (2d Cir.2005) (*quoting Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001)). Second, he must demonstrate that the omitted instruction "so infected the entire trial that the resulting conviction violates due process."[4] *Estelle,* 502 U.S. at 71, 112 S.Ct.

---

**3.** "Indeed, the 'federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq* as being facially adequate.'" *Capellan,* 975 F.2d at 70 n. 1

(citation omitted) (*quoting Holmes v. Scully,* 706 F.Supp. 195, 201 (E.D.N.Y.1989)).

**4.** While Bell cites to the Sixth Amendment in support of his claim that his right to a fair

475 (*quoting Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). In other words, an erroneous jury instruction under state law, without a due process violation, "is not a basis for habeas relief." *Id.* at 71–72, 112 S.Ct. 475; *see also Gilmore v. Taylor,* 508 U.S. 333, 342, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) (absent a due process violation, even jury "instructions that contain errors of state law may not form the basis for federal habeas relief"). In determining whether Bell's claim meets this high burden, the Court must consider the allegedly erroneous jury instruction in the context of the entire jury charge. *See Estelle,* 502 U.S. at 72, 112 S.Ct. 475; *Smalls v. Batista,* 191 F.3d 272, 277 (2d Cir.1999).

 At trial, Bell requested a jury instruction on his defense of "temporary and lawful possession of a weapon" with respect to the charge of Criminal Possession of a Weapon in the Second Degree. Under New York law, "[w]hen determining whether to give a charge on a claimed defense, the trial court must view the evidence in the light most favorable to the defendant" and instruct the jury on the charge "if it is sufficiently supported by the evidence." *People v. Butts,* 72 N.Y.2d 746, 536 N.Y.S.2d 730, 533 N.E.2d 660, 663 (1988). By all indications, the Trial Court properly refused to instruct the jury on a matter that was not "sufficiently supported by the evidence." *Butts,* 536 N.Y.S.2d 730,

533 N.E.2d at 663. For example, Bell claimed that he dropped the gun in the building lobby, but the weapon in question was recovered from Bell's vehicle after the BOLO stop. While Bell argued to the Trial Court that "Moore could have put the gun in the car," (App. Br. 35), such a prospect was not supported by any evidence. On appeal, the Appellate Division ruled that "[e]ven under defendant's version of the events, his conduct was utterly at odds with any claim of innocent possession." *Bell,* 848 N.Y.S.2d at 618 (quotation marks omitted). The Appellate Division thus held that the Trial Court "properly denied defendant's request for a charge on the defense of temporary and lawful possession since there was no reasonable view of the evidence, viewed in a light most favorable to defendant." *Id.* In other words, the Appellate Division determined that the requested instruction was not sufficiently supported by the evidence, even when viewed in the light most favorable to Bell, as required under New York law.

In the Trial Court's refusal to issue Bell's requested instruction, there is no indication that Bell "was erroneously deprived of a jury instruction to which he was entitled under state law." *Jackson,* 404 F.3d at 621. Applying state law, the courts of New York determined that Bell's requested instruction was not sufficiently supported by the evidence, and "it is not

trial was violated, the general tenor of this claim comports with one grounded in a due process violation under the Fourteenth Amendment. As the Supreme Court has stated: "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *see also Estelle,* 502 U.S. at 71–72, 112 S.Ct. 475 (finding that a claim of an allegedly incorrect jury instruction arises under the Due Process Clause). While the Supreme Court has held that "the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment

requirement of a jury verdict are interrelated," *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), that case addressed a defective instruction which essentially permitted the trial court judge to determine whether the defendant was guilty beyond a reasonable doubt, thereby depriving the defendant of a jury verdict. Here, Bell does not challenge that his verdict was rendered by a jury; thus, his claim is properly understood to be a claim under the Due Process Clause of the Fourteenth Amendment and the Court treats it as such.

the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475. Because the Court finds that there was no violation of state law in the Trial Court's refusal of Bell's requested instruction, Bell fails to satisfy the first requirement in establishing the violation of a due process violation, and his claim must therefore be rejected.

■ Even if the Court were to determine that the Trial Court's refusal of Bell's requested instruction was in error, such a refusal did not violate his right to due process. In its charge, the Trial Court instructed the jury that "use of the weapon with justification is not evidence of possession with intent to use it unlawfully against another." (Resp. Br. 25.) Therefore, the jury was instructed that if it decided that Bell was justified in using the weapon, such use alone could not form the basis of a guilty verdict of Criminal Possession of a Weapon in the Second Degree. Upon consideration of the jury charge in its entirety, the Court is persuaded that there is no indication that the omission of Bell's requested instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 71, 112 S.Ct. 475; *see also Washington v. Fischer,* 150 Fed.Appx. 8, 9 (2d Cir.2005) (reviewing jury charge in its entirety and concluding that " 'the ailing instruction by itself' would ... not have 'so infected the entire trial that the resulting conviction violates due process.' ") (*quoting Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir. 1990)); *Denis v. Upstate Corr. Facility,* 361 F.3d 759, 760 (2d Cir.2004) ("[W]hen the charge is considered in its entirety, it explained the law accurately and there is no reasonable likelihood that the jury applied the instructions in an unconstitutional manner."). The Court therefore denies Bell's petition with respect to this claim.

### 3. *Excessive Sentence*

■ Finally, Bell contends that his sentence of fourteen years of imprisonment was excessive and should be reduced in the interest of justice. To the extent that this claim relies on state law principles, it is not cognizable on federal habeas review. *See, e.g., Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475 ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

■ To the extent that Bell also presents a federal claim under the Eighth Amendment, the Court finds this claim unexhausted because the constitutional dimension of the excessive-sentence claim was not "fairly presented" to the state courts on direct appeal. *See Fama,* 235 F.3d at 808 (*quoting Picard,* 404 U.S. at 275, 92 S.Ct. 509). Bell's appellate briefs presented his excessive-sentence claim in terms of state law, invoking the power of a New York appellate court to reduce sentences in the interest of justice under N.Y.Crim. Proc. Law §§ 470.15(3)(c) and 470.15(6)(b). Both this Court and other courts in this district have found that a petitioner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" a federal constitutional claim in state court. *See, e.g., Acosta v. Giambruno,* 326 F.Supp.2d 513, 521–22 (S.D.N.Y.2004); *Grant v. Berbary,* No. 99 Civ. 12017, 2002 WL 33985139, at *3 n. 3 (S.D.N.Y. Jan. 18, 2002); *Castillo v. Abrams,* No. 88 Civ. 1165, 1988 WL 96026, at *2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its discretionary authority to reduce a sentence [under state law], without more, is not enough to alert the court that the claim is of constitutional dimension."). Therefore, the Court finds Bell's excessive-sentence claim under the Eighth Amend-

ment to be unexhausted and thus not cognizable on habeas review.

However, even if the Court were to review Bell's excessive-sentence claim on the merits, "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992). Bell's sentence of fourteen years falls within the New York statutory guidelines for a second felony offender convicted of Possession of a Weapon in the Second Degree. *See* N.Y. Penal L. §§ 265.03, 70.02(1)(b), 70.06(6)(b) (2005) ("For a Class C violent felony offense, the term must be at least five years and must not exceed fifteen years[.]").

Issues of sentencing rationales and ranges are "generally a policy choice to be made by state legislatures, not federal courts." *Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003). Thus, "a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate" because "the decision of a sentencing [court] is entitled to substantial deference." *United States v. Persico*, 853 F.2d 134, 138 (2d Cir.1988) (citations omitted); *see also Hemphill v. Senkowski*, No. 02 Civ. 7093, 2004 WL 943567, at *11 (S.D.N.Y. May 3, 2004).

Because Bell's sentence falls squarely within the applicable range established by the New York legislature, his excessive-sentence claim presents no valid grounds for habeas relief.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the petition (Docket No. 2) of Demetrius Bell ("Bell") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED in its entirety.

As Bell has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**