Arturo REYNOSO, Petitioner,

v.

Dale ARTUS, Superintendent
of Clinton Correctional
Facility, Respondent.

No. 09 Civ. 2111 (VM).

United States District Court,
S.D. New York.

June 30, 2010.

396

Arturo Reynoso, Attica, NY, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se petitioner Arturo Reynoso ("Reynoso"), currently incarcerated at Clinton Correctional Facility in New York ("Clinton"), brings this petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") against Dale Artus, the superintendent of Clinton ("Respondent"). Reynoso was convicted in New York State Supreme Court, Bronx County (the "Trial Court"), of murder in the second degree, in violation of New York Penal Law ("NYPL") § 125.25(1)-(2), as well as criminal possession of a weapon in the second degree, in violation of NYPL § 265.03(2). The Trial Court sentenced Reynoso to an indefinite prison term of twenty-five years to life.

In the Petition, Reynoso asserts several federal constitutional claims as grounds for habeas relief. First, Reynoso argues that his conviction was based on insufficient evidence. Second, he contends that the Trial Court's sentencing procedure violated the doctrines enunciated by the Supreme Court in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Third, Reynoso claims a violation of due process because the Trial Court denied his request for a hearing on possible extraneous influence on the jury verdict. Fourth, he argues that the police stopped him without reasonable suspicion and used legally-defective identification procedures. Finally, Reynoso claims that the state prosecutor (the "State") unlawfully failed to disclose evidence material to his defense. For the reasons discussed below, the Court DENIES Reynoso's Petition.

## I. BACKGROUND [1]

### A. FACTS

Reynoso's conviction arises out of the murder of Juan Pablo Castaneda Martinez ("Martinez") on July 8, 2000. At approximately 11:45 p.m., near 2353 Jerome Avenue in the Bronx, two men approached Martinez. Following a brief exchange of words, one of the two men fatally shot Martinez in the chest. After the two men walked away, several eyewitnesses flagged down a police car and gave a description of the shooter. Approximately ten minutes later, two New York City police officers, who had heard a radio transmission describing the perpetrator, stopped Reynoso

---

1. The factual and procedural summary below is derived from the following documents: Brief of Appellant in *New York v. Reynoso,* 820 N.Y.S.2d 801 (1st Dep't 2006), undated; Brief of Respondent in *New York v. Reynoso,* 820 N.Y.S.2d 801 (1st Dep't 2006), dated May 2006; C.P.L. 440.10 Decision ("§ 440.10 Ruling"), dated October 1, 2007; the Petition, dated May 4, 2009; Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated January 20, 2010; Respondent's Memorandum of Law in Support of Answer Opposing Petition for Writ of Habeas Corpus, dated January 19, 2010 ("Habeas Opp."); Petitioner's Reply Memorandum of Law, dated April 5, 2010 ("Habeas Reply"). Except where specifically referenced, no further citation to these sources will be made.

two blocks from the scene. A police cruiser then arrived, bringing two eyewitnesses to determine whether or not Reynoso was the shooter. Two police officers flanked Reynoso, each standing about two feet away. The officers did not physically restrain Reynoso. The first two eyewitnesses identified Reynoso as the shooter by his clothing in a so-called showup procedure.[2] A third man arrived and also identified Reynoso as the shooter.

## B. *PROCEDURAL HISTORY*

In July 2000, a Bronx County Grand Jury returned an indictment charging Reynoso with two counts of murder in the second degree, pursuant to NYPL § 125.25(1) (intentional homicide) and NYPL § 125.25(2) (reckless homicide "[u]nder circumstances evincing a depraved indifference to human life"); one count of manslaughter in the first degree, pursuant to NYPL § 125.20(1); and one charge of criminal possession of a weapon in the second degree, pursuant to NYPL § 265.03(2). Following a hearing on the legality of the police's stop of Reynoso and the use of showup identification procedures, the Trial Court, by a decision and order date May 12, 2002, found that the police had reasonable suspicion and that the identification procedures were not unduly suggestive. On May 24, 2002, the Trial Court jury found Reynoso guilty of intentional second degree murder and criminal possession of a weapon in the second degree. The Trial Court sentenced Reynoso to an indeterminate prison term of twenty-five years to life.

In February 2006, Reynoso appealed his conviction to the New York State Supreme Court, Appellate Division, First Judicial Department ("Appellate Division"), which unanimously affirmed his conviction on September 21, 2006. *See People v. Reynoso*, 32 A.D.3d 761, 820 N.Y.S.2d 801 (1st Dep't 2006). On October 14, 2006, the New York Court of Appeals denied Reynoso leave to appeal the Appellate Division's order. *See People v. Reynoso*, 7 N.Y.3d 869, 824 N.Y.S.2d 614, 857 N.E.2d 1145 (2006).

Reynoso then sought post-conviction relief. On December 18, 2006, he moved in the Trial Court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("NYCPL") § 440.10. Reynoso argued that the State had violated a New York precedent. *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), by failing to provide him with an autopsy audiotape and statements prepared by the medical examiner. The court rejected those arguments in a decision and order dated October 1, 2007 (the "§ 440.10 Ruling"). On March 25, 2008, the Appellate Division denied Reynoso's request for permission to appeal the § 440.10 Ruling.

Reynoso initially filed a § 2254 petition in this Court on December 21, 2008. He subsequently filed an amended version, the instant Petition, on May 4, 2009.

## II. *DISCUSSION*

### A. *LEGAL STANDARD FOR HABEAS RELIEF*

#### 1. *Exhaustion*

■ A petitioner in custody pursuant to a judgment of a state trial court is entitled to federal habeas relief only if he has exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b)-(c). This standard generally requires that the petitioner "fairly present" his claims to the

---

**2.** In a showup procedure the police present a single suspect to witnesses for the purpose of identification.

highest available state court, setting forth all the factual and legal allegations he asserts in his federal petition. *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997).

### 2. *Independent and Adequate State Grounds*

■ A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on state procedural grounds. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A claim resolved on independent and adequate state procedural grounds is generally not subject to habeas review. *See id.* A claim resolved in state court on the merits, however, may be subject to habeas review. A state court resolves a claim on the merits when it reduces its disposition to a final judgment with res judicata effect on substantive rather than procedural grounds. *See Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001); *see also Castillo v. Walsh,* 443 F.Supp.2d 557, 562 (S.D.N.Y. 2006).

### 3. *Substantive Grounds for Federal Habeas Relief*

■ Federal habeas review of state court decisions is governed by the standard set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241–55 ("AEDPA"). AEDPA provides that

> [a] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Accordingly, a petitioner must demonstrate that his state court conviction violated federal law. *See*

*Di Guglielmo v. Smith,* 366 F.3d 130, 136–37 (2d Cir.2004) (*citing Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

■ Not every alleged violation of federal law, however, will warrant the issuance of a writ of habeas corpus. *See Thurman v. Allard,* No. 01 Civ. 8746, 2004 WL 2101911, at *11 (S.D.N.Y. Sept. 22, 2004). Where a state court has decided a petitioner's federal claims on the merits, a court may grant habeas relief only if the state court's decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■■ For the purposes of federal habeas review, "clearly established federal law" refers to the holdings, as opposed to dicta, of Supreme Court decisions in effect at the time of the relevant state court decision. *See Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to clearly established federal law" within the meaning of § 2254(d) if a state court decision contradicts relevant Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Id.* at 405–06, 120 S.Ct. 1495. Under this standard, as long as the state court decision applies the correct legal rule to the petitioner's facts, it is not subject to habeas review, even if the federal court would have reached a different conclusion

if it were to apply the rule itself. *See id.* at 406, 120 S.Ct. 1495.

■ A state court decision is based on an "unreasonable application of clearly established federal law" if the court correctly identifies the legal rule set forth in governing Supreme Court cases, but unreasonably applies the rule to the particular facts of the case. *See id.* at 412–13, 120 S.Ct. 1495. A federal court may grant habeas relief only where the state court decision, as it pertains to any issue of federal law, was objectively unreasonable in light of relevant precedent. *See id.* at 409, 120 S.Ct. 1495. In construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive habeas review. *See id.* at 411, 120 S.Ct. 1495. However, the state court decision need not be "so off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted). Thus an unreasonable application "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (*quoting Francis S.,* 221 F.3d 100 at 109).

### 4. *Pro Se Petitioners*

Reynoso has filed this Petition pro se. Because pro se petitioners are held to less stringent standards than petitioners represented by counsel, the Court must liberally construe Reynoso's claims. *See, e.g., Bell v. Ercole,* 631 F.Supp.2d 406, 413 (S.D.N.Y.2009).

### B. *APPLICATION*

1. *Reynoso Exhausted State Remedies and There Was a Final Judgment on the Merits*

Reynoso unsuccessfully appealed his conviction to the Appellate Division and the New York Court of Appeals denied leave to appeal. He also unsuccessfully moved for postconviction relief under NYCPL § 440.10. Accordingly, neither Reynoso nor Respondent disputes that Reynoso has exhausted all available state remedies and that there was a final judgment on the merits. Therefore, the Court must address only the question of whether the State's decision was "contrary to" or "an unreasonable application of" clearly established federal law or resulted in a decision "based on an unreasonable determination of the facts." *See* 28 U.S.C. § 2254(d).

2. *The Legal Sufficiency of the Trial Court's Verdict*

■ To determine the legal sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (alteration in original). The jury's findings of fact are "presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). In addition, "all possible inferences that may be drawn from the evidence must be construed in the prosecution's favor." *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir. 1996).

■ Reynoso argues that no rational trier of fact could have found that he committed the murder. First, Reynoso notes that at the time of his arrest he had a goatee and mustache, yet none of the eyewitnesses mentioned that the shooter had facial hair. (*See* Habeas Reply at 5.) Second, Reynoso points out that while he had blood on his clothing and hands, none of

the eyewitnesses reported seeing blood on the shooter. (*See id.*)

In spite of Reynoso's arguments, the Court is not persuaded that Reynoso has met his burden under *Jackson.* Drawing all inferences against Reynoso, a rational jury could have inferred that Reynoso's "very fine," "light" mustache and goatee were difficult to see at night. (*See* Habeas Opp. at 9 (quoting trial transcript).) Moreover, the Trial Court admitted photographs of Reynoso's hands and clothing into evidence, allowing the jury to evaluate the visibility of the blood. (*See id.*) Despite the disparities noted by Reynoso, a jury could have credited the testimony of the eyewitnesses and other evidence presented at trial as rational bases for arriving at a guilty verdict. Accordingly, the Court finds that the Appellate Division did not adopt a contrary or unreasonable application of the *Jackson* standard in determining that the jury verdict was based on sufficient evidence.

To the extent that Reynoso also argues that, alternatively, the verdict was contrary to the weight of the evidence, he presents a claim that is not cognizable in § 2254 proceedings. *See Maldonado,* 86 F.3d at 35 ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [federal habeas] appeal; we defer to the jury's assessments of both of these issues.").

### 3. *Reynoso's Sentence*

Reynoso also claims that the Trial Court's sentencing procedure violated *Crawford* and *Apprendi. Crawford* held that the Confrontation Clause of the Sixth Amendment gives the accused a right to confront and cross-examine out-of-court testimony introduced at trial. *See* 541 U.S. at 50–51, 124 S.Ct. 1354. Reynoso argues that his constitutional rights were violated because the Trial Court did not permit him to challenge a mandatory presentencing report, which indicated that he had associated with a "Security Risk Group" during his incarceration before and during trial. Reynoso contends that his inability to challenge the report was prejudicial because the Trial Court used the report as a basis for imposing the maximum sentence.

The Court finds Reynoso's argument to be without merit. *Crawford* did not extend the right of confrontation to statements or reports used for the purposes of sentencing. *See United States v. Martinez,* 413 F.3d 239, 242 (2d Cir.2005) ("[T]he right of confrontation does not apply in the sentencing context."). The Trial Court thus violated no constitutional right when it considered the report without affording Reynoso the opportunity to dispute the truth of its contents.

Reynoso also contends that the Trial Court unconstitutionally failed to present sentencing facts to a jury to be proved beyond a reasonable doubt. In *Apprendi* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Under New York law, the minimum sentence for second degree murder is fifteen years to life and the maximum is twenty-five years to life. *See* NYPL § 70.00(2)(a), (3)(a)(I); NYPL § 125.25(1). Accordingly, since Reynoso's sentence of twenty-five years to life does not increase the penalty beyond the statutory maximum, the Court concludes that *Apprendi* does not apply.

### 4. *Reynoso's Claims of Intrusion on the Jury Deliberation Process*

Reynoso also contends that the Trial Court was wrong to deny his request

for a hearing on possible outside influence on the jury's verdict. Reynoso points out that after the first day of deliberation the jury appeared to mark "not guilty" on the verdict sheet, but returned a verdict of "guilty" the next day. (*See* Habeas Reply at 10.)

■ Courts are ordinarily prohibited from admitting juror testimony in order to impeach a jury verdict except where there is an allegation of "extraneous influence" on the jury. *Tanner v. United States*, 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). The Second Circuit has noted that "there is no question that a federal court's review into jury deliberations, even a criminal jury's deliberations is a decidedly limited enterprise." *Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir.2003); *see also Attridge v. Cencorp Div. of Dover Tech. Int'l, Inc.*, 836 F.2d 113, 114 (2d Cir.1987) ("Inquiries into the thought processes underlying a verdict have long been viewed as dangerous intrusions into the deliberative process. They undermine the finality of verdicts and invite fraud and abuse.").

■ A hearing on possible extraneous influence on the jury verdict is warranted "only when reasonable grounds for investigation exist. Reasonable grounds are present when there is clear, strong, substantial and incontrovertible evidence." *See United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir.1983). It is proper for courts to refuse a post-verdict hearing even when jurors come forth with allegations of misconduct. *See, e.g., United States v. Stewart*, 590 F.3d 93, 133–34 (2d Cir.2009) (holding that the district court properly denied a post-verdict hearing when a juror made allegations of impropriety during the jury deliberations). Accordingly the court is not persuaded that Reynoso's allegations presented reasonable grounds for inquiry into the jury's verdict. This conclusion is further supported by the Trial Court's polling of the jurors. *See Goode v. Mazzuca*, No. 00 Civ. 7932, 2004 WL 1794508, at *5 (S.D.N.Y. Aug. 11, 2004) ("Courts are ... hesitant to inquire into juror conduct and considerations if jurors have confirmed their verdict during polling." (*citing United States v. Morris*, 977 F.2d 677, 689 (1st Cir. 1992))). Therefore the Court is not convinced that the Appellate Division acted unreasonably or contrary to federal law in upholding the Trial Court's denial of Reynoso's motion for a hearing on the jury verdict.

### 5. Reynoso's Fourth Amendment and Due Process Claims

#### a. Lack of Probable Cause

■ It is well-established that, where a habeas petitioner had a full and fair opportunity to present his Fourth Amendment claim before the state courts, the federal courts may not grant habeas relief. *See Stone v. Powell*, 428 U.S. 465, 481–82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Bell*, 631 F.Supp.2d at 415. In this action, Reynoso claims that his Fourth Amendment rights were violated because the police stopped him without reasonable suspicion. Reynoso, however, presented his Fourth Amendment claim in state court. *See Reynoso*, 820 N.Y.S.2d 801, 801 (App. Div. 1st Dep't 2006) (holding that the Trial Court had properly denied Reynoso's suppression motion and that "[t]he record supports the court's findings that the police had reasonable suspicion upon which to detain defendant...."). As Reynoso has made no showing that his state proceedings did not constitute a full and fair hearing, his Fourth Amendment claims are not cognizable on federal habeas review.

#### b. Defective Identification Procedures

■ Reynoso also argues that, apart from any Fourth Amendment violations

pertaining to his initial detention, the police's identification procedure violated his Fourteenth Amendment right to due process of law. The Second Circuit has held that "[r]eliability is the touchstone for the admission of eyewitness identification testimony pursuant to the Due Process Clause of the Fourteenth Amendment." *Brisco v. Ercole,* 565 F.3d 80, 88 (2d Cir. 2009). As a result, "identification evidence will be admissible if (a) the procedures were not [unnecessarily] suggestive or (b) the identification has independent reliability." *Id.* (alteration in original) (*quoting Raheem v. Kelly,* 257 F.3d 122, 133 (2d Cir.2001)).

■■■■■ A " 'showup' procedure is inherently suggestive because it involves the presentation of a single suspect to a witness by the police (as opposed to a lineup, in which several individuals are presented to the police, only one of whom is the suspect)...." *Brisco,* 565 F.3d at 88. Nonetheless "a claimed violation of due process in the conduct of a confrontation depends on the totality of the circumstances surrounding it...." *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), *overruled on other grounds by Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

■■■■■ A showup procedure is ordinarily constitutionally permissible when it takes place within close temporal and geographical proximity to the crime, as in Reynoso's case. *See Mendoza v. McGinnis,* No. 03 Civ. 2598, 2004 WL 736894, *6 (S.D.N.Y. Apr. 5, 2004) (*citing United States v. Butler,* 970 F.2d 1017, 1021 (2d Cir.1992)). In addition the presence of police during a showup procedure does not necessarily render it unduly suggestive even in cases where the defendant is handcuffed. *See United States v. Bautista,* 23 F.3d 726, 730 (2d Cir.1994); *Kirk v. Burge,* 646 F.Supp.2d 534, 547 (S.D.N.Y.2009).

■■■ In Reynoso's case, the police conducted three separate showup procedures, which took place two blocks from the murder scene and less than ten minutes after the shooting. Also, while the police were standing near Reynoso they had their guns holstered and did not restrain him. Accordingly, under the "totality of the circumstances" the showup identification procedures were not unduly suggestive and the state courts did not act contrary to or apply an unreasonable interpretation of federal law.

### 6. *Reynoso's Rosario and Brady Claims*

Finally, to the extent that Reynoso challenges his conviction as a violation of *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), his claim is not cognizable on habeas review. *See Collins v. Artus,* 496 F.Supp.2d 305, 317 (S.D.N.Y. 2007) ("A violation of *Rosario* does not present a federal constitutional question upon which federal habeas corpus relief can be premised.").

Along with the *Rosario* claim, Reynoso's Petition also refers to a possible claim under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Second Circuit has noted that while "*Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant" certain material must be disclosed if it "creates a reasonable probability of altering the outcome." *United States v. Coppa,* 267 F.3d 132, 146 (2d Cir.2001).

■■■ Reynoso contends that the State unlawfully failed to disclose an audiotape of statements by the medical examiner who conducted the victim's autopsy and later testified at trial. Reynoso's claim fails for two reasons. First, he has not

made a showing that such material actually existed. In considering Reynoso's *Rosario* claim in his NYCPL § 440.10 motion, the Trial Court noted that Reynoso's "motion is devoid of any evidence that an audiotape or other written statements of the autopsy actually exist." (*See* § 440.10 Ruling at 6–7.). Reynoso's Petition is similarly devoid of any specific allegations about the existence of such material. Second, even if such material existed, Reynoso has made no indication that its absence was prejudicial. Reynoso's Petition gives this Court no reason to disagree with the Trial Court's assessment that Reynoso's claim "is devoid of any factual basis setting forth how he was prejudiced by non disclosure." (*Id.* at 8) Therefore, the Court concludes that Reynoso's *Brady* claim is also without merit.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition dated May 4, 2009 of Petitioner Arturo Reynoso ("Reynoso") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Reynoso has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**