James **KIRK,** Petitioner,

v.

John **BURGE,** et al., Respondent.

No. 07 Civ. 7467 (LTS)(GWG).

United States District Court,
S.D. New York.

Aug. 6, 2009.

Marlon Geoffrey Kirton, Marlon G. Kirton, P.C., New York, NY, for Petitioner.

*ORDER ADOPTING REPORT AND RECOMMENDATION*

LAURA TAYLOR SWAIN, District Judge:

Petitioner James Kirk ("Petitioner") brings this habeas corpus petition (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, New York County for two counts of robbery in the first de-gree, one count of robbery in the second degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. Petitioner asserts five claims for habeas relief: (1) that he was denied his constitutional right to speedy trial; (2) that his Fourth Amendment rights were violated when he was denied a *Mapp/Dunaway* hearing; (3) that the admission of identification testimony was unduly suggestive; (4) that the trial court erred in responding to a jury note outside of the presence of petitioner or his counsel; and (5) that his twenty-five-year sentence is excessive. Petitioner also moves to amend his Petition to add a new claim for ineffective assistance of counsel.

On February 24, 2009, Magistrate Judge Gorenstein issued a Report and Recommendation (the "Report"), recommending that the Petition be denied. The Court has considered thoroughly all of the parties' submissions, including letters from the Petitioner, who is represented by counsel, that were submitted *pro se*. For the following reasons, the Court adopts Judge Gorenstein's recommended conclusion and denies the petition for a writ of habeas corpus.

The factual and procedural background of this matter are described in detail in the Report, familiarity with which is presumed.

■ In reviewing a Report and Recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.A. § 636(b)(1)(C) (West Supp.2006). To accept the Report of a magistrate judge to which no timely objection has been made, a district court "need only satisfy itself that there is no clear error on the face of the record." *Johnson v. Reno,* 143 F.Supp.2d 389, 391 (S.D.N.Y.2001); *see*

*also Bryant v. New York State Dep't of Corr. Servs.,* 146 F.Supp.2d 422, 424–25 (S.D.N.Y.2001) (court may accept portions of the report to which no objections have been made if it is "not facially erroneous"). The Court is required to make a *de novo* determination as to those aspects of the Report to which specific objections are made. *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997). However, to the extent that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error. *See United States ex rel. Casa Redimix Concrete Corp. v. Luvin Constr. Corp.,* 00 Civ. 7552, 2002 WL 31886040, at *1 (S.D.N.Y.2002); *Camardo v. Gen. Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992); *Chabrier v. Leonardo,* No. 90 Civ. 0173, 1991 WL 44838, at *1 (S.D.N.Y. Mar. 26, 1991); *Schoolfield v. Dep't of Corr.,* No. 91 Civ. 1691, 1994 WL 119740, at *2 (S.D.N.Y. Apr. 6, 1994). "[O]bjections to a Report and Recommendation are to be specific and are to address only those portions of the proposed findings to which the party objects." *Camardo,* 806 F.Supp. at 381–82.

■ Petitioner's counsel timely submitted objections to the Report. Petitioner objects to Judge Gorenstein's conclusion that his constitutional speedy trial claim is procedurally barred and is thus ineligible for habeas review, contending that Petitioner would suffer a "fundamental miscarriage of justice" if the Court fails to consider the merits of this claim. However, as Judge Gorenstein noted in the Report, "[in] the case of procedural default (including where an exhausted claim no longer

can proceed in state court), we may reach the merits of the claim only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." (The Report at 11) (internal quotation marks and citation omitted). Since "[t]he term 'miscarriage of justice' in this context necessarily includes 'actual innocence' of the petitioner," *Gibson v. Phillips,* 263 Fed.Appx. 78, 80 (2d Cir.2008), this objection simply restates an argument that Judge Gorenstein considered in recommending that the Petition be dismissed. Petitioner's remaining objections likewise simply reiterate the arguments that Petitioner made to Judge Gorenstein in support of the Petition.[1] Therefore, the Court applies a clear error standard of review.

The Court has reviewed Judge Gorenstein's comprehensive and well-reasoned Report thoroughly and finds no clear error. Accordingly, the Court adopts Judge Gorenstein's Report and Recommendation in its entirety. For the reasons stated in the Report, the Petition is denied. Petitioner's motion to amend is also denied, for the reasons stated in Judge Gorenstein's Report.

Petitioner may not appeal this order unless "a circuit justice or judge issues a certificate of appealibility." 28 U.S.C.A. § 2253(c)(1) (West Supp.2006). A certificate will be granted "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2) (West Supp.2006); *see generally United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997) (discussing the standard for issuing a certificate of appealibility). The Court finds that Petitioner will not be able to sustain this burden. Thus,

1. The district court decision in *Brisco v. Phillips,* 376 F.Supp.2d 306 (E.D.N.Y.2005), on which Petitioner relies in reasserting his argument that the "showup" identification procedure was unduly suggestive was reversed by

the Second Circuit in *Brisco v. Ercole,* 565 F.3d 80 (2d Cir.2009). Moreover, the Court finds that the Report sufficiently distinguished *Brisco* from the instant case on its facts.

the Court declines to issue a certificate of appealibility.

The Clerk of Court is respectfully requested to enter judgment dismissing the Petition and close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

James Kirk, currently an inmate at the Elmira Correctional Facility in Elmira, New York, has brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 4, 2004, Kirk was convicted after a jury trial of two counts of robbery in the first degree, robbery in the second degree, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. *See* Petition for Writ of Habeas Corpus, filed Aug. 23, 2007 (Docket # 2) ("Pet."), at 1. That same day, Kirk was sentenced to a prison term of 25 years. *Id.* For the reasons stated below, Kirk's petition and supplemental motion should be denied.

## I. BACKGROUND

This case arises out of the robbery of a 99–cent store that occurred on April 22, 2002.

### A. Suppression Hearing

A suppression hearing was held on February 9, 2004. (H. 1).[1] At the hearing, Police Officer Ramon Fuller testified that on April 22, 2002, he and a partner were on a routine patrol when they saw two individuals pointing at a store and saying that their store had been robbed. (Fuller:

H. 4–6). Officer Fuller then saw two individuals running from the store, one wearing a white jacket and the other wearing blue overalls. (Fuller: H. 6, 10). He and his partner pursued the one in a white jacket unsuccessfully. (Fuller: H. 6, 12). Officer Fuller was told via radio that the second person had been apprehended nearby. (Fuller: H. 7). He brought Melody Powell, one of the store owners, to the apprehended individual, where she identified him as the person who had committed the robbery. (Fuller: H. 7–8). At the time of the identification, the individual was in front of a white van, handcuffed, and had uniformed officers around him. (Fuller: H. 15). The individual was later determined to be Kirk. (Fuller: H. 8).

Kirk did not present evidence at the hearing.

The trial judge found Officer Fuller's testimony credible and based his finding of facts on Officer Fuller's testimony along with the testimony of a detective. (H. 38). The court further found that the identification was a "prompt on the street identification in the vicinity of the alleged robbery within minutes of the alleged robbery." (H. 40). Thus, the court determined that the identification was not unreasonably suggestive. (H. 40).

### B. Trial and Sentencing

A trial was held from February 10, 2004 to February 17, 2004.

The People called a number of witnesses, including Powell, who described how Kirk stuck a gun in her side, told her to open the cash register, and made off with $800 in cash and several pink bank deposit slips with Powell's name on them.

---

**1.** On April 4, 2008, the People filed a volume of transcripts from the state court proceedings that includes the suppression hearing, the trial, and sentencing. *See* Trial Transcript, filed Apr. 4, 2008 (Docket # 7). We refer to these as "H.," "Tr.," and "S." respectively. We cite the trial transcripts by the particular date of the trial because the transcript page numbers sometimes restart at "1" on a new trial date.

(Powell: 2/10 Tr. 99–127). Powell also described her subsequent identification of Kirk. (Powell: 2/10 Tr. 109–10, 124–25). Officer Ulysses Dadacay recounted Kirk's arrest and how he recovered from Kirk's person the stolen money along with pink bank deposit receipts with Powell's name on them. (Dadacay: 2/10 Tr. 31–34). Officer Fuller testified about his interaction with Powell and the chase of Kirk. (Fuller: 2/10 Tr. 127–149). Officer Darrin Scruggs described how he spotted and apprehended Kirk after being radioed of the incident in progress. (Scruggs: 2/10 Tr. 150–163). Detective Gerard Blake described the events at the police station following the arrest. (Blake: 2/10 Tr. 164–183). Detective Blake's testimony included a description of two statements: first, a three-page confession that Kirk dictated and signed, and that Detective Blake wrote; and, second, an additional statement on the third page of the confession that was written and signed by Kirk, which offered to assist the police locate drug dealers in exchange for leniency, and stated that he only robbed drug dealers. (Blake: 2/10 Tr. 172–178).

Kirk testified on his own behalf. (Kirk: 2/17 Tr. 196–220). He denied that he committed the robbery, denied that the cash and deposit slips were recovered from him, and testified he had not read the statement before he signed it. (Kirk: 2/17 Tr. 207–08, 211–12, 217–18).

On February 17, 2004, the jury convicted Kirk on all charges. (2/17 Tr. 287–88).

On March 4, 2004, the trial judge sentenced Kirk to a 25–year determinate sentence for each count of robbery in the first degree, a 15–year determinate sentence for robbery in the second degree, a 15–

year sentence for criminal possession of a weapon in the second degree, and a 7–year determinate sentence for criminal possession of a weapon in the second degree. (S. 11). All sentences were to run concurrently. (S. 11).

### C. *State Appeal*

On August 22, 2005, Kirk filed an appellate brief. *See* Brief for Defendant–Appellant (annexed as Ex. A to Lisa Fleischmann's Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Apr. 4, 2008 (Docket # 8) ("Fleischmann Decl.")) ("Def. App. Br."). Kirk's brief raised five grounds for reversal: (1) violation of New York State's speedy trial law, Criminal Procedure Law section 30.30, because the People allegedly were not ready to try the case within the statutorily required time frame, *id.* at 26–36; (2) the failure of the trial judge to give Kirk's counsel the opportunity to assist the Court in interpreting an ambiguous jury note, *id.* at 37–42; (3) the trial court's denial of Kirk's request to hold a *"Mapp/Dunaway"* hearing,[2] *id.* at 43–50; (4) use of an unduly suggestive "showup" identification, *id.* 51–54; and (5) an unduly excessive and harsh sentence, *id.* at 55–61.

On March 28, 2006, the First Department denied Kirk's appeal. *See People v. Kirk,* 27 A.D.3d 383, 812 N.Y.S.2d 492 (1st Dep't 2006). The court ruled that: (1) the trial court properly denied Kirk's speedy trial motions and New York's speedy trial law was not violated, *id.* at 383, 812 N.Y.S.2d 492; (2) the jury note was unambiguous and the exhibits were given to the jury "in accordance with the parties' prior agreement," *id.* at 384, 812 N.Y.S.2d 492;

---

**2.** A *Mapp/Dunaway* hearing refers to a hearing used to decide whether evidence was obtained through violation of a defendant's Fourth Amendment right to be free of unreasonable search and seizures, *see Mapp v.*

*Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and whether probable cause existed for an arrest, *see Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

(3) the denial of the *Mapp/Dunaway* hearing was proper "since [Kirk's] factual assertions were insufficient given the information available to him concerning the reason for his arrest," *id.*; (4) the fact that the defendant was in handcuffs and surrounded with police officers was not unduly suggestive, *id.*; and (5) there was no basis on which to reduce the sentence, *id.*

On April 26, 2006, Kirk sought leave to appeal to the New York Court of Appeals. *See* Letter from Jonathan Marvey, Staff Attorney, Office of the Appellate Defender, to Hon. Judith S. Kay, Chief Judge, Court of Appeals (Apr. 26, 2006) (annexed as Ex. M to Fleischmann Decl.) ("Letter to Court of Appeals"). This request included the first four bases for relief noted above, but did not include the claim that the 25 year sentence was unduly harsh. *See id.* The People opposed this request. *See* Letter from Frank Glaser, Assistant District Attorney to Hon. Albert M. Rosenblatt, Judge, Court of Appeals (June 5, 2006) (annexed as Ex. M to Fleischmann Decl.). On May 31, 2006, the Court of Appeals denied leave to appeal. *See People v. Kirk*, 6 N.Y.3d 895, 817 N.Y.S.2d 630, 850 N.E.2d 677 (2006).

### D. *440.10 Motion*

In the meantime, in July 2005, Kirk filed a pro se motion pursuant to Criminal Procedure Law section 440.10 alleging ineffective assistance of counsel. *See* Notice of Motion to Vacate Judgment of Conviction and Sentence on the Grounds of Ineffective Assistance of Counsel (annexed as Ex. F to Fleischmann Decl.) ("Kirk 440 Mot."); Affidavit of James C. Kirk in Support of Motion to Vacate the Judgment on the Grounds of the Ineffective Assistance of Trial Counsel in the Case (annexed as Ex. F to Fleischmann Decl.) ("Kirk 440 Aff.").[3] Specifically, the motion alleged (1) that his

counsel did not object during the trial to hearsay and impermissible bolstering by the prosecutor, Kirk 440 Aff. at 8–11; (2) during voir dire, his counsel allowed Kirk to be absent from sidebar conversations, *id.* at 11–13; (3) his counsel failed to ask for a "missing witness instruction," *id.* at 13–14, 19; (4) his counsel failed to request a "transitional instruction charge," *id.* at 15–16; (5) his counsel failed to object to the inclusion of a lesser included offense in relation to the gun charge, *id.* at 17; (6) counsel failed to make an opening statement, *id.* at 18; and (7) counsel failed to object to the admission of certain photographs, *id.* The People filed a brief in opposition on September 29, 2005. *See* Memorandum of Law in Response to the Defendant's Motion for Summary Judgment, Pursuant to Crim. Proc. L. § 440.10 (annexed as Ex. G to Fleischmann Decl.).

On March 22, 2006, the motion was denied without a hearing. *See* Decision & Order, Indictment No. 2436/02 (annexed as Ex. H to Fleischmann Decl.). The court found Kirk's ineffective assistance claims were contradicted by the record, supported only by the Kirk's affidavit, or otherwise legally and factually insufficient. *Id.* at 3.

On April 24, 2006, Kirk sought leave to appeal this decision to the Appellate Division. *See* Notice of Motion to Issue Certificate (annexed as Ex. I to Fleischmann Decl.). On August 17, 2006, the Appellate Division denied Kirk's request. *See* Certificate (annexed as Ex. L to Fleischmann Decl.).

### E. *Federal Proceedings*

On August 23, 2007, Kirk filed the instant petition for habeas corpus along with a memorandum in support. *See* Petition,

---

**3.** The motion also alleges that the conviction was based on false testimony, but no discussion of this claim is contained in the affidavit in support. *See* Kirk 440 Mot.; Kirk 440 Aff.

filed Aug. 23, 2007 (Docket # 2); Memorandum of Law in Support of Petition for Writ of Habeas Corpus, filed Aug. 23, 2007 (Docket # 3) ("Pet. Mem."). The petition alleges five grounds: (1) violation of Kirk's constitutional right to a speedy trial; (2) improper denial of a *Mapp/Dunaway* suppression hearing; (3) failure of the trial judge to suppress identification evidence; (4) failure of the trial judge to show a jury note to defendant before responding; and (5) excessive sentence. *See* Pet. Mem. at 2–15. On April 4, 2008, respondent filed an opposition to the petition. *See* Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Apr. 4, 2008 (Docket # 9). Kirk filed a reply. *See* Reply, dated June 13, 2008 (Docket # 13) ("Pet. Reply").

On July 13, 2008, Kirk sent a pro se letter to the Court requesting that the Court consider his section 440.10 claims. *See* Letter From James Kirk dated July 13, 2008 (Docket # 18). On October 24, 2008, his counsel filed a "supplemental notice of motion" seeking to add the claims of ineffective assistance of counsel that had been made in the section 440.10 motion. *See* Supplemental Notice of Motion, filed Oct. 24, 2008 (Docket # 14) ("Supp. Mot."); Memorandum of Law in Support of Petitioner's Supplemental Motion (annexed to Supp. Mot.) ("Supp. Mem."). The respondent opposed this motion on the ground that any motion to amend the petition was untimely and would fail also because the claims are procedurally barred. *See* Letter from Lisa Fleischmann to Hon. Gabriel W. Gorenstein (Sept. 10, 2008), filed Feb. 18, 2009 (Docket # 17) ("Letter in Opp'n to Supp. Mot.").

## II. *APPLICABLE LAW*

### A. *Review of Claims in Habeas Corpus Petitions*

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001) (citations omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001); *accord Rosa v. McCray,* 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), *cert. denied,* 546 U.S. 889, 126 S.Ct. 215, 163 L.Ed.2d 201 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that a state court decision is "contrary to" clearly estab-

lished federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. at 405–06, 120 S.Ct. 1495. *Williams* also held that habeas relief is available under the " 'unreasonable application' " clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

Only holdings of the Supreme Court are considered for purposes of determining "clearly established Federal law." *See Rodriguez v. Miller*, 537 F.3d 102, 106–107 (2d Cir.2008). Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." *Id.*

### B. *Requirement of Exhaustion*

██ Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state custody in violation of the Constitution or a federal law or treaty. *See* 28 U.S.C. § 2254(a). "Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see* 28 U.S.C. § 2254(b)(1)(A). The Supreme Court has held that:

[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, ... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728; *accord Smith v. Duncan*, 411 F.3d 340, 347 (2d Cir.2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. *See, e.g., Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)") (citations and internal quotation marks omitted). The petitioner must also have fairly presented the "federal nature" of each claim to the state courts. *Id.; Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam); *Rosa*, 396 F.3d at 217.

### III. *DISCUSSION*

We first address each of the claims raised in the petition. We then discuss why the ineffective assistance of counsel claims raised in the "supplemental motion" are time-barred.

### A. *Speedy Trial*

██ Kirk first argues that he was denied his constitutional right to a speedy trial. Pet. Mem. at 1–4. This claim was never presented on appeal in state court, however. Although Kirk's appellate brief raised a statutory speedy trial claim under New York State law, *see* Def. App. Br. at 26–36 (citing N.Y.Crim. Proc. Law § 30.30), such a claim is insufficient to preserve a federal constitutional speedy trial claim, *see Cadilla v. Johnson*, 119

F.Supp.2d 366, 374 (S.D.N.Y.2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim.") (citation omitted); *Smith v. LaClair*, 2008 WL 728653, at *3 n. 29 (S.D.N.Y. Mar. 17, 2008) (collecting cases). Given that the Appellate Division, First Department has strict deadlines for the filing of briefs, *see, e.g.*, N.Y. Court Rules § 600.11, there is no reason to believe that Kirk could now return to the Appellate Division to raise new arguments on his appeal.

Nor may he raise this issue in a new section 440.10 petition inasmuch as this claim is record-based, and Kirk "unjustifiably" failed to appeal these matters to the Appellate Division. *See* N.Y.Crim. Proc. Law 440.10(2)(c). As a result, these claims are procedurally barred under New York State law. *See, e.g., Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir.2006) ("[Petitioner's] claim is now exhausted because state remedies are no longer available. [Petitioner] has already taken his one direct appeal, and this claim is procedurally barred from consideration in a collateral attack on his conviction.... [Therefore, petitioner] has procedurally defaulted his ... claim.") (internal citations omitted).

In such a situation, case law reflects that the unexhausted claim will be "deemed exhausted." *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir.2004) (citing *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991)), *cert. denied*, 543 U.S. 1058, 125 S.Ct. 871, 160 L.Ed.2d 785 (2005); *accord Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). However, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland*, 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). "In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" *St. Helen*, 374 F.3d at 184 (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

■ In his reply brief, Kirk alleges there is cause and prejudice for failure to raise the claim. Pet. Reply at 2 (citing *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). To show cause, Kirk argues that his appellate lawyer was ineffective in failing to assert such a claim. *Id.* But the Second Circuit has squarely held that "ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim." *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir.2006) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–52, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Sweet v. Bennett*, 353 F.3d 135, 141 n. 7 (2d Cir.2003)). Kirk has never raised the inadequacy of his appellate counsel with the state courts. Thus, he cannot use this argument to show cause for the procedural default.

In sum, Kirk's speedy trial claim is procedurally defaulted.

### B. *Mapp/Dunaway Suppression Hearing*

Kirk argues that his Fourth Amendment rights were violated when he was denied a *Mapp/Dunaway* hearing based on his failure to make sufficient sworn factual allegations that would justify the holding of a hearing. Pet. Mem. at 5–6. Neither party has submitted Kirk's motion requesting a hearing, the response or the trial court's opinion. However, Kirk's appellate brief quotes what appears to be the pertinent

parts of his request. *See* Def. App. Br. at 44; *see also* Pet. Mem. at 5. The only sworn allegations on the issue of probable cause were those of his attorney, who asserted that Kirk "was stopped while walking down the street." *Id.*

The Supreme Court has held that:

where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell,* 428 U.S. 465, 481–82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *accord Capellan v. Riley,* 975 F.2d 67, 69 (2d Cir.1992).

■ Thus, the Second Circuit has held that habeas review of Fourth Amendment claims would be "undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan,* 975 F.2d at 70 (citation omitted).[4]

Here, Kirk has not shown either of these. New York Criminal Procedure law provides a mechanism for requesting such a hearing, but allows it to be denied where "(a) [t]he motion papers do not allege a ground constituting legal basis for the motion; or (b) [t]he sworn allegations of fact do not as a matter of law support the ground alleged." *See* N.Y.Crim. Proc. Law § 710.60(3). Federal courts have found these New York State court procedures to be adequate. *See, e.g., Lin v.*

*Filion,* 2004 WL 911777, at *6 (S.D.N.Y. Mar. 19, 2004).

■ Nor has Kirk shown any "unconscionable breakdown" of process in his case. Kirk argued his claim to the state trial court, the Appellate Division and the Court of Appeals, but the trial court and Appellate Division found that "given the information available to him concerning the reason for his arrest," Kirk's factual assertions were insufficient to warrant a hearing on the issue. *See Kirk,* 27 A.D.3d at 384, 812 N.Y.S.2d 492. Here, Kirk does no more than disagree with these courts' decisions, and suggest that his trial court motion papers were sufficient to grant a hearing. *See* Pet. Mem. at 5. "Mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan,* 975 F.2d at 72. Nor is a ruling unconscionable "simply because the federal court may have reached a different result." *Id.* at 71. Thus, Kirk's disagreement is inadequate to show "unconscionable breakdown." *Cf. Allah v. LeFevre,* 623 F.Supp. 987, 991–92 (S.D.N.Y.1985) (describing bribery of a judge, use of torture, and use of perjured testimony as examples of what might show an "unconscionable breakdown") (citing *Gates v. Henderson,* 568 F.2d 830, 840 (2d Cir.1977) (en banc)); *Grajales v. Brown,* 2008 WL 2313137, at *6 (E.D.N.Y. June 02, 2008) (police destruction of 911 tapes that may have been used in suppression hearing not "unconscionable breakdown").

In sum, review of Kirk's Fourth Amendment claim is barred by *Stone v. Powell.*

### C. *Suggestiveness of Identification*

■ Kirk argues that his showup identification was unduly suggestive. Pet. Mem. at 6–8.

---

4. The case cited in support of Kirk's position discusses the federal standard for obtaining a suppression hearing in federal court, and thus is not relevant to this claim. *See* Pet. Mem. at 5 (citing *U.S. v. Canty,* 971 F.Supp. 687 (N.D.N.Y.1997)).

The admission of identification testimony violates due process only when the identification is "'so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.'" *United States v. Bautista,* 23 F.3d 726, 729 (2d Cir.) (quoting *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)), *cert. denied,* 513 U.S. 862, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994). The inquiry consists of essentially a two-part test. First, a court must determine whether the identification procedure was "unnecessarily suggestive." *Id.* at 729–30. Second, even where the procedure is unnecessarily suggestive, the court must determine "'if, when viewed in the totality of the circumstances, [the out-of-court identification] possesses sufficient indicia of reliability.'" *Id.* (quoting *United States v. Simmons,* 923 F.2d 934, 950 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991)). In the absence of either suggestiveness or unreliability, there is no constitutional error. *See id.*

Showing a suspect singly to a witness for the purpose of identification shortly after a crime—commonly known as a "showup"—is not inherently unconstitutional. The procedure has been upheld by the Second Circuit and other courts on numerous occasions. *See, e.g., Bautista,* 23 F.3d at 729–32 (showup not unnecessarily suggestive where defendant was presented to the witness "in handcuffs; at night; in the custody of police officers; with his face lit by flashlights; and in the presence of [an officer] who, each time the [witness] identified a suspect, radioed to his fellow officers, 'it's a hit'"); *United States v. Butler,* 970 F.2d 1017, 1021 (2d Cir.) (identification proper where suspects were brought to victim who was sitting in a police car), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992); *United States v. Sanchez,* 422 F.2d 1198, 1199–200 (2d Cir.1970) (police drove suspects by witnesses at the scene of the crime); *United States v. Ortiz,* 2000 WL 37998, at *1 (S.D.N.Y. Jan. 18, 2000) (defendants were in handcuffs, standing next to a marked police car, and accompanied by uniformed police officers). Thus, courts on habeas review have found showups not to be unnecessarily suggestive where they took place shortly after the crime. *See, e.g., Warren v. Conway,* 2008 WL 4960454, at *23 (E.D.N.Y. Nov. 18, 2008) ("Showup identification procedures that occurred within temporal and geographic proximity to the crime have generally not been found to be unduly suggestive.") (showup took place one mile from and 90 minutes after the crime); *Charlemagne v. Goord,* 2008 WL 2971768, at *15 (S.D.N.Y. June 30, 2008) (showup procedure within thirty minutes and eighteen blocks from the crime) (citing cases); *Corchado v. Rabideau,* 576 F.Supp.2d 433, 450 (W.D.N.Y.2008) ("The fact that the showup occurred within thirty minutes of the shooting and in reasonably close proximity to the scene of the crime favors a finding that the procedure was not unduly suggestive and was, instead, the product of effective police work."); *McCray v. Barkley,* 2004 WL 32931, at *9–10 (S.D.N.Y. Jan. 07, 2004) (two showup identifications within thirty minutes of victim notifying police that he had spotted a group that had robbed him); *McBride v. Senkowski,* 2002 WL 523275, at *5–6 (S.D.N.Y. Apr. 8, 2002) (showup identification over two hours after robbery where suspects were surrounded by officers). The *Bautista* court noted that a showup procedure conducted in this manner serves the "very valid function" of "prevent[ing] the mistaken arrest of innocent persons." 23 F.3d at 730. Accordingly, "'it is now settled law that prompt on-the-scene confrontation is consistent with good police work and does not offend the principles established in *United States v. Wade* [, 388 U.S. 218, 87

S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ].'" *Valtin v. Hollins,* 248 F.Supp.2d 311, 318 (S.D.N.Y.2003) (quoting *United States ex rel. Cummings v. Zelker,* 455 F.2d 714, 716 (2d Cir.), *cert. denied,* 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972)).

Here, at the time of the identification, Kirk was handcuffed, near a white van, and had uniformed officers around him. (Fuller: H. 7–8). Nonetheless, the judge presiding over the hearing found that "the identification procedure was a prompt on the street identification in the vicinity of the alleged robbery within minutes of the alleged robbery and, therefore, the identification was not unreasonably suggestive." (H. 40). The Appellate Division similarly concluded that "[t]he fact that defendant was in handcuffs and in the presence of police officers did not render the victim's showup identification, made in close temporal and spatial proximity to the crime, unduly suggestive." *Kirk,* 27 A.D.3d at 384, 812 N.Y.S.2d 492. This Court agrees.

In arguing the identification was unduly suggestive, Kirk points to the fact that the perpetrator was out of the police officer's sight for "a few minutes," the presence of the officers and van during the identification, the fact that the witness was not available for cross-examination at the suppression hearing, and the fact that the witness was not asked to identify the clothing worn by the perpetrator. *See* Pet. Mem. at 7–8 (citing *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Raheem v. Kelly,* 257 F.3d 122 (2d Cir.2001); *Brisco v. Phillips,* 376 F.Supp.2d 306 (E.D.N.Y.2005)); Pet. Reply at 3–4 (same). This is insufficient to show the identification was unduly suggestive. First, the fact that there were only a "few minutes" between the crime and the identification strongly supports the appropriateness of the showup procedure. It is of no moment that the perpetrators were out of the police officers' sight. The fact

that defendant was handcuffed in the presence of police officers and a white van is a feature of many showups and was similar to, or less dramatic than, prior cases in which no suggestiveness was found. *See, e.g., Bautista,* 23 F.3d at 729–32 (suspects were handcuffed and in the presence of officers); *Ortiz,* 2000 WL 37998, at *1 (suspect was handcuffed next to a marked police vehicle). Further, not only do defendants not have a right to require the presence of the identifying witness at a suppression hearing (unless it appears the identification was unduly suggestive), *see Duran v. Miller,* 322 F.Supp.2d 251, 257 (E.D.N.Y.2004); *Rivalta v. Artuz,* 1997 WL 401819, at *3 (S.D.N.Y. July 16, 1997), Kirk points to nothing in the record suggesting that he even sought the testimony of this witness.

Finally, the absence of a description of the perpetrator by the witness before the identification would be relevant only to the reliability of the identification, rather than the situation's suggestiveness. *See Biggers,* 409 U.S. at 199–200, 93 S.Ct. 375 (listing the witness's prior description of perpetrator as a reliability factor). Because the showup identification procedure used here was not unnecessarily suggestive, we need not reach the issue of whether the identification was reliable. *See Bautista,* 23 F.3d at 729 (both suggestiveness and lack of reliability are needed for constitutional violation to exist).

The cases cited by Kirk are all factually distinguishable. The challenged identification in *Biggers* was a station-house showup many months after the incident. *See* 409 U.S. at 188, 93 S.Ct. 375. *Raheem* involved a lineup rather than a showup identification, and was unduly suggestive because the suspect but none of the fillers wore the clothing previously described by the witness as worn by the perpetrator. *See* 257 F.3d at 136. Similarly, in *Brisco,*

the suspect in a showup identification "was told by the Detective to hold a wet pair of maroon shorts that fit the distinctive description of the perpetrator's clothing that the victim gave the police." 376 F.Supp.2d at 315. In the present case, there is no allegation that the police made Kirk wear clothing the witness had previously associated with the perpetrator.

Because the showup identification was not unduly suggestive, this claim will not support habeas relief.

### D. *The Jury Note*

Kirk argues that the trial court committed reversible error by responding outside the presence of Kirk or his counsel to a jury note that asked for certain exhibits to be sent to the jury room. Pet. Mem. at 9–13.

The Second Circuit has held that "[i]t is a well-settled principle of constitutional law that a criminal defendant has the right 'to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.'" *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002), *cert. denied*, 537 U.S. 1117, 123 S.Ct. 879, 154 L.Ed.2d 794 (2003) (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and citing *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)). The right is derived from both the Sixth Amendment's Confrontation Clause and from the common law. *United States v. Fontanez*, 878 F.2d 33, 35 (2d Cir.1989) (citing cases). The right is not absolute, however, but rather is implicated only where the defendant's presence "has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 78 L.Ed. 674 (1934); *accord Monroe v. Kuhlman*, 433 F.3d 236, 246 (2d Cir.2006); *Clark v. Stinson*, 214 F.3d 315, 322–23 (2d Cir.

2000), *cert. denied*, 531 U.S. 1116, 121 S.Ct. 865, 148 L.Ed.2d 778 (2001). It applies where fairness and justice "would be thwarted by [the defendant's] absence, and to that extent only." *Stinson*, 214 F.3d at 323 (quoting *Snyder*, 291 U.S. at 107–08, 54 S.Ct. 330). Accordingly, there is no constitutional right to be present "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106–07, 54 S.Ct. 330.

In addition, this right is circumscribed by harmless error analysis. *Rushen v. Spain*, 464 U.S. 114, 117 n. 2, 119–20, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). "[A]n ex parte communication by a judge to a jury in response to a jury inquiry may be considered harmless error where the communication cannot be said to have prejudiced the defendant." *United States v. Mejia*, 356 F.3d 470, 476 (2d Cir.2004). An example given by the *Mejia* court of non-prejudicial conduct was where the trial court performs "'administrative matters'" such as "where a jury requested certain tape recordings that had been received in evidence." *Id.* (quoting *United States v. Ballistrea*, 101 F.3d 827, 837 (2d Cir.1996)).

Here, Kirk argues that the trial judge committed constitutional error by giving the jury evidence it requested without consulting the parties. But the court had informed all parties by means of the jury charge that "one or more or all of the exhibits received in evidence" would be sent to the jury upon request. (2/17 Tr. 277). Kirk's trial counsel did not object to this charge. When, during deliberations, the jury sent a note asking for the "statement, all photos presented, confession," these were brought into the jury. (2/17 Tr. 286). The trial judge later explained that these exhibits were sent to the jurors because "both sides had agreed to letting those items of evidence go in to the jury pursuant to their written note." (2/17 Tr.

286). Kirk's trial counsel did not object to this act, nor did he deny that such an agreement had been made. When the court then asked the parties if they were ready for the verdict, Kirk's counsel agreed. (2/17 Tr. 286).

Kirk provides no real argument that his situation fits within the case law laid out above. *See* Pet. Mem. at 9–12. At most, he argues that the jury note was ambiguous because "the only statement admitted into evidence was the petitioner's confession" and thus consulting the parties would have given guidance on what should be brought into the jury. *Id.* at 12; Pet. Reply at 4–5.

The Appellate Division found no such ambiguity, *Kirk,* 27 A.D.3d at 384, 812 N.Y.S.2d 492, and that finding is amply supported by the record. Detective Blake, during his testimony before the jury, described the contents of the transcribed confession Kirk gave, and then described the writing on the third page as "another statement" given by Kirk that was written in Kirk's own handwriting. (Blake: 2/10 Tr. 172–73). Therefore, it is unsurprising that the jury might request these documents separately. This reading is reinforced by the fact that Kirk is unable to point to any other exhibit the jury may have been referring to. *See* Pet. Reply at 5.

Kirk's reliance on *United States v. Ronder,* 639 F.2d 931 (2d Cir.1981) is misplaced. *See* Pet. Mem. at 10–12. In *Ronder,* the trial judge failed to disclose three notes sent from the jury that involved far more substantive matters, including jurors' requests for advice on dealing with a difficult juror. *Ronder,* 639 F.2d at 933–34. In addition, the trial judge subsequently gave a charge the jury to assist it in breaking a deadlock without letting the parties know, *id.,* raising the potential of actual prejudice from the defendant's absence.

Thus, this claim also does not support habeas relief.

### E. *Excessive Sentencing*

■ Kirk argues that the trial court committed constitutional error by ordering an unreasonably harsh sentence. Pet. Mem. at 13–15. While this claim was not included in Kirk's leave to appeal application to the Court of Appeals, *see generally* Letter to Court of Appeals, the respondent has not raised the fact that it is unexhausted and thus procedurally barred. Accordingly, we discuss the claim on the merits.

Kirk complains that his sentence of 25 years was "unreasonable." The only Supreme Court case law relied on by Kirk, however, is the doctrine articulated in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and subsequent Supreme Court cases that delineated the right to a jury trial with respect to certain factual issues that increase a sentence. *See* Pet. Mem. at 13–15. But Kirk never explains what relevance this case law has to his own sentencing. Nor can the Court guess the relevance, as this case law does not accord a right to a jury trial to prove a prior conviction. *See, e.g., Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Here, Kirk received a sentencing enhancement based solely on his adjudication as a "predicate felon," S. 2–4; *see* N.Y. Penal Law § 70.06, not on the basis of any other factual finding that increased his sentence.

■ Without citing any governing federal law (other than the federal sentencing statute, 18 U.S.C. § 3553(a)(1), which does not apply to state sentences), Kirk briefly argues that the trial judge did not properly weigh Kirk's various personal characteristics and features of the crime in arriving at Kirk's sentence. Pet. Mem. at 15. But because a habeas court must grant considerable deference to legislatively mandated terms of imprisonment, successful chal-

lenges to sentences are "exceedingly rare." *See Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam) (citation omitted). Indeed, the Second Circuit has broadly stated that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by state law." *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992) (per curiam); *accord Pinero v. Greiner,* 519 F.Supp.2d 360, 371, 389 (S.D.N.Y.2007); *Diaz v. Herbert,* 317 F.Supp.2d 462, 479–80 (S.D.N.Y.2004); *Herrera v. Artuz,* 171 F.Supp.2d 146, 151 (S.D.N.Y.2001); *Sutton v. Herbert,* 39 F.Supp.2d 335, 337 n. 1 (S.D.N.Y.1999). Kirk does not contest that he was sentenced within the range permitted by state law.

That the sentence is within the limits permitted by New York law does not entirely resolve the issue, however. The Eighth Amendment prohibits "extreme sentences that are grossly disproportionate to the crime." *United States v. Snype,* 441 F.3d 119, 152 (2d Cir.) (citing cases) (internal quotation marks omitted), *cert. denied,* 549 U.S. 923, 127 S.Ct. 285, 166 L.Ed.2d 218, *reh'g denied,* 549 U.S. 1090, 127 S.Ct. 759, 166 L.Ed.2d 587 (2006); *accord Solem v. Helm,* 463 U.S. 277, 288, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This, however, is not one of the "rare instances" where a " 'reviewing court ... [is] required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.' " *Bethea v. Scully,* 834 F.2d 257, 261 (2d Cir.1987) (quoting *United States v. Or-*

*tiz,* 742 F.2d 712, 714 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 573, 83 L.Ed.2d 513 (1984)). It is enough to say that a sentence of 25 years is not grossly disproportionate for a conviction for an armed robbery by a criminal with eleven prior criminal convictions, including four felonies and a prior violent felony, involving "robbery, weapons, larcenies and drug-related offenses." (S. 9).[5]

### F. *Ineffective Assistance of Counsel*

■ Kirk also has moved to amend his petition to add his various claims of ineffective assistance of counsel. *See* Supp. Mot. The respondent argues that this proposed amendment must be denied as untimely. Letter in Opp'n to Supp. Mot. at 1–4.

28 U.S.C. § 2244(d)(1) provides a one-year limitation period for the filing of habeas corpus petitions. While section 2244 provides several possible dates from which the one-year period may begin to run, the applicable date here is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Thus, because Kirk had 90 days after his Court of Appeals decision to seek certiorari from the Supreme Court, Kirk's limitations period began to run 90 days after his May 31, 2006 Court of Appeals decision. *See Kirk,* 6 N.Y.3d 895, 817 N.Y.S.2d 630, 850 N.E.2d 677. This would make the limitation period begin on August 29, 2006, and end on August 29, 2007.[6]

---

5. In his reply brief, Kirk argues that he was punished for going to trial, citing to an argument made on his direct appeal in which he contended that he was offered a far lesser sentence in a plea bargain. Pet. Reply at 5–6. Kirk points to no Supreme Court case that would bar the giving of a sentence following trial greater than one that had previously been offered as part of a plea bargain. The case he cites, *United States v. Jackson,* 390

U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), held something entirely different: that a statute authorizing the death penalty only for defendants who go to trial was unconstitutional.

6. A portion of this time period might have been tolled by virtue of Kirk having filed his section 440.10 petition. *See* 28 U.S.C. § 2244(d)(2). But that tolling ended on Au-

Kirk first submitted his request to add a new claim by means of his letter dated July 13, 2008 (Docket #18)—a request that was subsequently formalized by the motion filed on October 24, 2008. *See* Supp. Mot. But even the July 13, 2008 request came long after the limitations period expired. Accordingly, the new claims are time barred.

Kirk cannot overcome this time bar by seeking to "relate back" the date of the presentation of his new claims to the date of the filing of his original petition. To achieve this outcome, Kirk must show the new claims "arose out of the conduct, transaction, or occurrence set forth" in his initial petition. *See* Fed.R.Civ.P. 15(c)(1)(B); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir.2000). While relation back will be available if "the original and amended petitions state claims that are tied to a common core of operative facts," *Mayle v. Felix*, 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), it is not sufficient for a claim to simply come from the same "trial, conviction, or sentence," *id.* at 662–64, 125 S.Ct. 2562. "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, [the] limitation period would have slim significance." *Id.* at 662, 125 S.Ct. 2562 (citation omitted).

Kirk has not demonstrated "a common core of operative facts" between any of his new claims and any of the original claims. His original petition alleged five grounds for relief: (1) violation of his constitutional right to a speedy trial; (2) improper denial of a *Mapp/Dunaway* suppression hearing; (3) failure of the trial judge to suppress identification evidence; (4) failure of the trial judge to show a jury note to defendant's counsel before responding; and (5) excessive sentencing. Pet. Mem. at 2–15. His proposed ineffective assistance claims, however, do not involve any of these matters. Instead, they consist of his allegations that (1) his counsel did not object during the trial to hearsay and impermissible bolstering by the prosecutor, Kirk 440 Aff. at 8–11; (2), his counsel allowed Kirk to be absent from sidebar conversations during voir dire, *id.* at 11–13; (3) his counsel failed to ask for a "missing witness instruction," *id.* at 13–14, 19; (4) his counsel failed to request a "transitional instruction charge," *id.* at 15–16; (5) his counsel failed to object to the inclusion of a lesser included offense in relation to the gun charge, *id.* at 17, (6) his counsel failed to make an opening statement, *id.* at 18; and (7) his counsel failed to object to the admission of certain photographs, *id.* None of the new ineffective assistance claims have any factual connection to the claims in the original petition. The facts supporting the ineffective assistance claims thus differ in "time and type" from the facts underlying each of original claims in the petition, and therefore "relation back is prohibited under *Mayle*." *Johnson v. Ercole*, 2008 WL 4372649, *3 (E.D.N.Y. Sept. 22, 2008) (claim of ineffective assistance as to plea bargain did not relate back to claim relating to pretrial lineup); *accord Jorge v. Phillips*, 2008 WL 344718, at *2–3, 2008 U.S. Dist. LEXIS 11302, at *7–8 (S.D.N.Y. Jan. 31, 2008) (ineffective assistance claims as to plea bargain do not relate back to trial ruling and sentencing claims); *Soto v. Conway*, 565 F.Supp.2d 429, 436–39 (E.D.N.Y.2008) (ineffective assistance

gust 17, 2006, when the Appellate Division denied Kirk's request for leave to appeal the trial court's denial of his motion. *See, e.g., Cobado v. Conway*, 2008 WL 4239340, at *3 (W.D.N.Y. Sept. 11, 2008) (tolling on review of section 440 petition ends when Appellate Division denies leave to appeal). Thus it has no effect on the calculation of the time period for filing the petition.

claims as to appellate counsel for failure to appear at oral argument do not relate back to ineffective assistance claims as to appellate counsel for failure to raise a claim for ineffective assistance of trial counsel); *Valerio v. Phillips,* 2007 WL 4191817, at *6 (W.D.N.Y. Nov. 21, 2007) (claim of ineffective assistance as to a conflict of interest and plea bargain did not relate back to claims of ineffective assistance of counsel relating to failure to object to admission of evidence and trial rulings, and failure to request certain jury instructions); *Vargas v. United States,* 2007 WL 2246004, at *3–5, 2007 U.S. Dist. LEXIS 60214, at *8–12 (E.D.N.Y. Jul. 31, 2007) (ineffective assistance claims for advising defendant to withdraw and appeal, for failure to relay the prosecutor's cooperation agreement, and for failure to obtain certain laboratory reports do not relate back to entrapment claims).

Because Kirk's proposed ineffective assistance claims are barred by the statute of limitations, his request to amend his petition to include these claims should be denied.

*Conclusion*

For the foregoing reasons, Kirk's petition (Docket # 2) and motion seeking amendment of his petition (Docket # 14) should be denied.

### *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Laura T. Swain, and to the undersigned, at 500 Pearl Street, New York, New York 10007.

Any request for an extension of time to file objections must be directed to Judge Swain. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Dated: February 24, 2009

New York, New York